JOHN E. WILSON, Appellant, v. C. H. F. BOHSTEDT.

Intoxicating liquors: STATEMENT OF CONSENT: POLL BOOKS: EVI-
1 DENCE. The mere fact that the poll books and statement of
   consent to the sale of liquor were temporarily removed from
   the custody of the auditor for the purpose of inspection, thus
   giving an opportunity to make changes therein, will not, in
   the absence of a showing that changes were in fact made,
   render them inadmissible on an issue as to the sufficiency of
   the statement of consent.

Same: IDENTIFICATION OF SIGNERS. Parol evidence is not admissible
2 to identify persons who signed a statement of consent to the
   sale of liquor as having voted at the preceding election under
   somewhat different names, although there is an allegation that
   the names on the poll lists were not recorded as announced
   to the clerk of the election.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON,
Judge.

WEDNESDAY, MARCH 6, 1907.

REHEARING DENIED, FRIDAY, SEPTEMBER 27, 1907.

THIS is a special proceeding involving a statement of
general consent for the sale of intoxicating liquors in Iowa
county, Iowa.   The statement was circulated and signed just
after the general election of 1904, and was filed by the
plaintiff herein with the county auditor of said county on.
December 7, 1904.   It was canvassed by the board of super-
visors later in the same month, and was by the board found
to be sufficient under chapter 6, title 12, of the Code, for
the sale of intoxicating liquors in Iowa county.   From this
finding of the board of supervisors, the defendant, a citizen
of Iowa county, appealed to the district court by filing in
said court on December 27, 1904, a bond for costs, and a
general denial, as provided by section 2450 of the Code.

The proceeding was then duly certified to the district court where Wilson appeared in behalf of the statement, and tendered several issues among which was a plea in bar wherein he asked that Bohstedt's appeal be dismissed, because, after the canvass by the board of supervisors and before the certification of the record to the district court, the statement of consent had been taken by the auditor of the county from the county seat to another town and there left in the custody of one Butler, and other persons who were not connected with the auditor's office for a period of time covering a night and parts of two days, and because, after the canvass by the board of supervisors, and before the certification of the record to the district court, the poll books of the last preceding general election had been taken from the auditor's office, and for a number of days and nights were kept in the private office of Bohstedt's attorneys. Some other matters were also pleaded in bar which we need not at this time more specifically refer to. The plaintiff's plea in bar was overruled, and upon a trial of the issue as to the sufficiency of the statement of consent, the court found it insufficient, and the plaintiff appeals.—*Affirmed.*

*Hume & Hamilton,* for appellant.

*Popham & Havner,* for appellee.

*W. E. Wallace,* County Attorney, for Iowa county.

SHERWIN, J.— First as to the appellant's plea in bar: The board of supervisors found that the statement of general consent contained the names of more than the necessary 65 per cent. of the voters of the county voting at the last preceding general election, and, after such canvass had been made, and before the appellant's plea in bar had been heard in the district court, it is conclusively shown that the statement of consent and the poll books were in the custody

1. INTOXICATING LIQUORS: statement of consent: poll books: evidence:

of Bohstedt's attorneys in their office for the purpose of examination and comparison, and that they were kept there for some two or three days. Based upon this fact, the appellant contends that the statement of consent and the poll books were exposed to alteration and spoliation, and consequently became incompetent as evidence to overthrow or impeach the finding of the board of supervisors that the statement of consent was sufficient. There is some testimony in the record tending to show that there may have been some slight changes in the statement of consent after it was filed with the auditor, but there is an absolute want of evidence tending in any way to show that whatever changes may have been so made in the statement were made while it was in the possession, or under the control, of Bohstedt or his attorneys. The vital question, then, on this branch of the case is whether the mere opportunity to make changes in the statement of consent or in the poll books rendered them incompetent evidence as to the sufficiency of the statement of consent. Code, section 2449, requires that a statement of general consent shall be filed with the county auditor, and section 2450 provides that all such statements shall be publicly canvassed by the board of supervisors at a regular meeting, at least ten clear days' notice of such intent to canvass having been previously published by the county auditor. Section 2453 of the code provides that the county auditor " shall keep for inspection by any citizen who may desire it all papers required by the sections of this chapter relating to the mulct tax to be filed with him "; and section 2450 provides that, if an appeal be taken after a canvass by the supervisors " then the auditor shall certify the statement and all papers and records to the district court." We have held that, where ballots cast at an election have been exposed to fraudulent alteration or changes, or have been exposed to the public, or " handled by unauthorized persons, it renders them incompetent as evidence to overthrow the official count

and return." *Davenport v. Olerich,* 104 Iowa, 194; *De Long v. Brown,* 113 Iowa, 370.

The appellant contends that this rule should be applied to the instant case, and that this court should hold the statement of general consent and the poll books incompetent evidence to overthrow the action of the board of supervisors declaring the statement of consent sufficient because the statement of consent and the poll books were in the hands of the defendant's attorneys where there was a possibility of their being tampered with. We are unable to agree with this contention, however. The very fact that the statute gives any citizen of the county the right to contest the sufficiency of the statement of consent necessarily implies a right to the examination of such statement even in the absence of a statute expressly providing that all papers relating to the mulct tax filed with the auditor shall be open to the inspection of any citizen who may desire it. These papers then, including the statement of consent, became a part of the public records of the county, subject to examination by interested parties, and subject to the same rules governing the examination of other public records of the county, and no one, we think, will claim that, because an ordinary record book required to be kept in one of the county offices was temporarily out of the keeping of its legal custodian, it would thereby become incompetent evidence of its contents if they were otherwise admissible. No such rule applies to ballots, and one of the strong reasons for applying a different rule to them is because the ballots themselves cannot be identified; as said in the cases, " they have no earmarks." Statements of consent and poll books may be easily identified; this is particularly true of statements of consent, because they must, under the law, be signed by the voter himself, and, while it may cause some inconvenience to show — for instance, that he in fact signed the statement of consent, and that his signature had been erased or changed — it can, nevertheless, be done. We think

the trial court did not err in overruling the plea in bar, but while so holding, we are constrained to say that we think the better and safer practice is to keep all papers in these proceedings which the law requires shall be filed with the auditor in his office or under his immediate control, except when they are removed therefrom for use in proper judicial proceedings. This statement is made for information and guidance in the future.

As shown by the poll books, four thousand, five hundred and eighteen voters voted in Iowa county at the general election in 1904, and 65 per cent. of this number, the number of signers necessary to make the statement of consent sufficient, is two thousand, nine hundred and thirty-seven. The trial court counted two thousand, five hundred and thirty-three names on the statement of consent, and refused to permit the appellant to identify by parol evidence the names appearing on the statement of consent which differed in some manner from the names appearing on the poll books. The statement of consent and the poll books have been certified to this court, and we have given the same careful examination in connection with the abstracts and arguments of the parties, and we find that, under the rule announced in *Porter v. Butterfield,* 116 Iowa 725, the statement of consent falls far short of containing the required number of names. The appellant presents a list of 527 doubtful names appearing on the statement of consent which ought to be counted. It is manifestly impossible to present more than a few illustrations of the differences in the names appearing on the statement of consent and on the poll books, but there are very many instances where the difference is as follows: On the statement of consent, the name of G. H. Meyer appears, while a corresponding name on the poll book is George Meyer. Another instance is the name Henry Wagner on the statement of consent and H. C. Wagner on the poll book. William Wall on the statement of consent, and W. M. Wall on the poll

2. SAME:
identification
of signers.

book. William Border on the statement of consent, and W. H. Border on the poll book. In some instances the names are not even similar. In the *Porter-Butterfield* case, *supra,* we held that the only method of identifying names on the statement of consent is by the poll book or poll list, and that, where the name on the statement of consent is entirely different from that appearing on the poll book, parol evidence is not admissible for the purpose of showing that the voter who signed the statement of consent in fact voted at the preceding general election although under a somewhat different name. The holding therein is based upon the Code, section 2449, which provides that the statement shall be signed by 65 per cent. of the legal voters who voted at the last preceding general election as shown by the poll list of said election.

The appellant contends, however, that the rule of the *Porter-Butterfield* case is not controlling here because many of the names appearing on the poll books were not, in fact, as given to the clerk of election, but were so recorded through accident, fraud, or mistake, and that, because of this new element in the case, the parol evidence offered by him was competent. The statute makes no such exception, however, and, as said in the *Porter-Butterfield* case, the Legislature has power to make rules of evidence governing these proceedings, and, when it does so, such rules supersede general rules of evidence, and must be observed by the courts. It is practically conceded by the appellant that, unless this parol testimony was admissible, the statement of consent is insufficient, and there is no escape from this conclusion. With the policy of this legislation, we have nothing to do; and hence the appellant's argument relating thereto cannot be given judicial consideration.

A point is made as to the right to withdraw from the petition after notice of canvass has been given, but its determination is not necessary to a finding as to the sufficiency of the statement of consent, and we therefore do not decide it. The judgment of the district court is *affirmed.*