In the Matter of the General Statement of Consent to Sell Intoxicating Liquors within the City of Oskaloosa, Mahaska County, Iowa. J. H. DeBoard, Appellee, v. R. H. Williams and the Board of Supervisors of Mahaska County, Iowa, Appellants.

**Intoxicating liquors:** CANVASS OF CONSENT: PUBLICATION OF NOTICE.
1 The publication of a notice of the canvass of a statement of general consent to the sale of liquor in newspapers which must have been designated as the county official papers, had the supervisors performed their duty in designating official papers, was a sufficient notice to comply with the statute regarding publication of such notice.

**Same:** STATEMENTS OF CONSENT: WITHDRAWALS: REINSTATEMENT. Petitioners having signed a general statement of consent to the sale

of intoxicating liquor may subsequently reconsider their action and withdraw their names from such statement; but having so withdrawn their names and the time to again sign a consent petition having passed, they can not reinstate their names by the filing of withdrawals of such withdrawals.

**Same:** COMPARISON OF NAMES WITH POLL BOOKS. Names signed to a petition of general consent must correspond with the names appearing on the poll books of the last general election filed with the county auditor, and although the poll books are duplicates, one of which was filed with the city clerk, still such poll book is not competent for the purpose of comparison, as the statute requires that the book used for that purpose shall be the one filed with the county auditor.
Ladd and Evans, JJ., dissenting.

**Same:** AFFIDAVIT: REPUTABLE PERSON: EVIDENCE. The statute requires that the affidavit accompanying a statement of consent in proof of the signatures must be made by a reputable person; but the mere fact that the affidavit contains a false statement, or that the affiant had previously been convicted of crime does not necessarily show that he was not a reputable person.

**Same:** APPEAL. A citizen and taxpayer of the county may appeal from a judgment of the court reversing a finding of the board that the statement of consent was insufficient, where he appeared in the district court for the purpose of sustaining the action of the board.

*Appeal from Mahaska District Court.*—Hon. John F. Talbott, Judge.

Tuesday, February 13, 1912.

The board of supervisors of Mahaska county found the statement of general consent for the sale of intoxicating liquors in the city of Oskaloosa insufficient. This finding was reversed by the district court, and from its order an appeal taken.—*Reversed.*

*Popham & Havner* and *Irving C. Johnson,* for appellant.

*J. G. Patterson,* County Attorney, for appellee, Board of Supervisors of Mahaska County.

*Burrell & Devitt,* for appellee Williams.

Ladd, J.—I.  The poll books of the last preceding election disclosed that 2,363 electors cast their ballots in the city of Oskaloosa, and the last census indicated that its population numbers more than 5,000.  A majority of such electors, or 1,182, or more, then must have signed their names to the general statement of consent, in order to authorize the sale of intoxicating liquors in that city under the provisions of the mulct law.  Section 2448, Code.  On December 7, 1910, a general statement of consent, purporting to be signed by 1,451 electors who had voted at the last preceding election, was filed with the county auditor, and he fixed December 21st following as the time for hearing before the board of supervisors, and caused notice thereof to be published in every newspaper in Mahaska county. It is contended that this was not in compliance with section 2450 of the Code, which required that statements of consent "shall be publicly canvassed by the board of supervisors, at a regular meeting at least ten clear days notice of such intended canvass having previously been published by the county auditor in the official newspaper of the county."  No newspaper seems to have been designated as official by the board of supervisors since 1904, when all were named; the maximum price for printing to be distributed equally among them.  This practice had been followed since, so that, though none were expressly designated as official papers at the January session of that body each year, as exacted by section 441 of the Code, compensation for publishing matters required was distributed as though this had been done.  The board of supervisors must have selected newspapers published within the county "as the

*Marginal note:* 1. Intoxicating liquors: canvass of consent: publication of notice.

county official papers" and necessarily three of the only five published there. These notices, then, were published in the very papers they must have been, had that body performed its duty and designated them. Greater publicity was given than exacted by the statute quoted, and necessarily that which would have been given, had the newspapers been formally named by the supervisors as official, and we are of opinion that this was a compliance with the law.

II. The board of supervisors postponed the time for making the canvass until December 26, 1910. On that and the following day, withdrawals, reciting "that the undersigned . . . do hereby withdraw our names and signatures from said petition and ask your honorable body to not count our respective names in determining the petition of consent," and signed by 294 electors, were filed with the county auditor. Sixty-seven of those signing withdrawals subsequently signed instruments reciting what they had done, and "that such request to withdraw my name, and that same be not counted, was secured from me through a misunderstanding on my part, and I hereby request the board of supervisors of Mahaska county, Iowa, to canvass my original signature on said statement of general consent in favor of said sale and count my name as one of the voters residing in Oskaloosa, Iowa, who voted at the last general election, who consented that intoxicating liquors may be sold in said city of Oskaloosa, and I hereby cancel, revoke, and amend the said statement of withdrawal signed by me," and these withdrawals of withdrawals, so called, were duly filed with the county auditor before the canvass commenced. The board of supervisors found the statement of consent insufficient, and from this finding J. H. DeBoard appealed to the district court. On hearing, thirty names were deducted from the general statement of consent for reasons which are not questioned,

2. SAME: statements of consent: withdrawals: reinstatement.

leaving 1,421 signers. Seventeen names were deducted from the 294 signing withdrawals, leaving 277 who had withdrawn their signatures from the statement of consent. The court also deducted the sixty-seven names of those who had signed "the withdrawals of withdrawals" from the 277 withdrawals, leaving 210 names to be deducted from the 1,421 signers, so that 1,210 names remained on the general statement of consent, or twenty-nine more than a majority, and a judgment was entered, reversing the finding of the board of supervisors, and declaring the statement of consent sufficient. In the course of the hearing, the poll books on file with the city clerk, as well as those filed with the county auditor, were received in evidence, the court holding these of equal credibility, and no question is raised but that thirty-three names were counted which, while corresponding with the poll books filed with the city clerk, were not identical with those on the poll books filed with the county auditor. It is also contended that at least two of the persons whose affidavits accompanied the statement of consent were not reputable persons, as required by section 2452 of the Code, and for this reason the names on such statements should have been rejected.

The questions raised may be disposed of in the order mentioned, and first concerning the so-called "withdrawals of withdrawals." The right of an elector who has signed his name to the general statement of consent to withdraw it therefrom was settled in *Green v. Smith,* 111 Iowa, 183, and the briefs filed demonstrate the correctness of that decision. In *Scott v. Naacke,* 144 Iowa, 164, we held that the general statement of consent might not be amended, after filing, by adding other names thereto, saying:

The filing, notice, and public canvass of such statements is for the protection of the public and the statute relating thereto should be literally construed. If additional statements or petitions are allowed after the original is

filed and noticed for hearing, it will open the door for indefinite filings, and the original statement may be formal only, while it was undoubtedly the intent of the statute that, unless the petition on file at the time of the publication of notice of its canvass is sufficient, it must fail. To hold otherwise would be to open the door for the filing and canvass of more than one such statement in a year. For if, after a partial canvass by the board of supervisors, it became apparent that the statement would prove insufficient on account of withdrawals, or for other reasons, the petitioners would only have to provide another petition containing additional names, and by so doing clearly defeat the plain language and purpose of the statute.

In *Lemon v. Drexel*, 152 Iowa, 144, the court said, with reference to withdrawals of withdrawals: "It is also claimed in this connection that the withdrawals had the effect of reinstating the names upon the original statement of consent. The case last cited (*Scott v. Naacke*) disposes of this proposition as we understand it." Appellant contends that the point was not involved in that case, but it was distinctly made by the appellee therein, and the petition for rehearing, in which the authorities now relied on were cited, was subsequently overruled. It was there held that "no names can be added to the statement after it is filed." This was in harmony with what was said in *Loomis v. Bailey*, 45 Iowa, 400. There the statute, relating to the removal of county seats, provided that where the names appeared, both upon the petition for the change and remonstrance against it, it should be counted only on the remonstrance, and the court said:

The wisdom of so restricting the power of the supervisors will plainly appear when it is considered to what extent of investigation, and the uncertainty thereof, they might be led. If remonstrants, upon change of their wishes, may require the effect of papers upon which the supervisors are to act to be correspondingly changed, so may petitioners. If one change be made, two may, and upon another change of mind the petitioners and remonstrants

may require the supervisors to count them on the side they first espoused. Not only would there be almost interminable investigation and great confusion in the business, but invitations would be given to the partisans of the different localities to call to their aid all influences which might tend to change the mind of a voter. . . . The peace of communities and the good of the people forbid that new methods of increasing this bitterness, and other opportunities for unfairness, be introduced into these contests. See, also, *Willing v. Rye,* 123 Iowa, 471.

The filing of the withdrawals in the language quoted, and their presentation to the board of supervisors, had the effect of removing the signers' names from the statement of consent. To withdraw his name therefrom, according to the lexicographers, is to take it away or remove it from the statement. Whether he do so was not optional with the board of supervisors, but the result of the independent act of the elector in signing such withdrawal and causing same to be filed with the county auditor and the board before the statement had been acted upon. Having withdrawn his signature from the statement of consent, he could not reinstate the same thereon, for this would be equivalent to signing his name again and section 2452 of the Code enacts that: "No name shall be counted that was not signed within thirty days prior to the filing of said statement of general consent."

Appellee seems to rely upon *State v. Geib,* 66 Minn. 266 (68 N. W. 1081), and *Hoffman v. Nelson,* 1 Neb. (Unof.), 215 (95 N. W. 347). In the former, persons who had signed a petition for the removal of county seat subsequently signed an instrument withdrawing their names from the petition, and designating a person as an attorney in fact to cancel their names from such petition, and instructing him to do so. Before the convening of the board of supervisors, the same person executed another paper, designating the relator as attorney in fact to act for them, revoking the former instrument, and demanding that their

names remain on the petition and be counted. Upon the presentation to the board of supervisors of the instrument first mentioned, the relator objected and presented that last mentioned, and the court, in disposing of the question, said:

After the petition is filed with the auditor, the right of a petitioner to consumate a withdrawal of his name therefrom is in abeyance until the board meets in open session to consider the petition. It follows that neither the execution of the withdrawals and their delivery to the attorneys in fact therein named, nor their presentation to the auditor, and the demand for the opportunity to 'strike the names of the persons executing the withdrawals from the petition, effected a withdrawal of such names. Until the withdrawals and the powers of attorney were presented to the board and acted upon, they were *in fieri;* and the persons executing the instruments could recall the withdrawals, and revoke the authority of their attorney to give effect to the withdrawals, by appearing before the board and causing their names to be erased from the petition. While the withdrawal remained in the possession of the attorney, and before the board acted upon it, such possession was that of the petitioner, and it was subject to his absolute control. When the attorney presented the withdrawal with his authority to make it effectual, he was met with a complete and absolute revocation of his authority and a recall of the withdrawal. The poison and antidote were concurrently administered. Both the attorney and the board had in each case due notice that the withdrawal had been recalled and the power of attorney revoked before any action had thereon; hence the erasure from the petition of the names of the one hundred and forty-four electors here in question was unauthorized and void.

It will be observed that the decision is in accordance with what we have said. Of course, withdrawals, if not presented to the board of supervisors, can not prove effective, and all that was held was that presentation thereof, against the wishes and demand of those signing the same,

would not be binding upon them. In the case at bar, this was not done; but the withdrawals were presented in pursuance of the expressed authority of those signing them, and this, under the rule as announced in *State v. Geib,* operated to remove their names from consideration as petitioners.

In *Hoffman v. Nelson, supra,* the commissioners could not see any objection to the citizen changing his mind a second time as to the expediency of having an election, declining to follow *State v. Geib, supra.* There is every reason for recognizing the right of the elector to change his sentiments on any subject as often as he pleases, to oscillate, like a shuttlecock, from side to side, so long as he withholds these from the record. But when the statement of consent, with his name thereon, as exacted by statute, is filed with the auditor, it must remain, unless he withdraw; and when, by his own voluntary act, he does remove it therefrom by filing his withdrawal and presenting this, *eo instante,* to the board of supervisors, it removes his name from consideration as a signer of the general statement of consent, and there is no way to restore it; for that must be signed within thirty days previous to the filing thereof. To hold otherwise would require a construction of the law which would permit the citizen to trifle in dealing with public officers and in the discharge of an important public duty, and encourage unseemly controversies over individual action which should be taken after mature deliberation, and in the exercise of unbiased judgment. If he may change a second time, there is no ground for denying him the third or any number of changes, changing so often that the tribunal to decide may experience difficulty in observing him on one side of the proposition long enough to be counted. Neither official nor other business is or should be transacted in that way. Having signed the general statement of consent, he may subsequently reconsider his action and withdraw his name therefrom by

filing such withdrawal with the county auditor, and directing the attention of the board of supervisors thereto. Having done so, and the time to again give his consent having passed, reinstatement of his name on the statement is not within his right. We discover no reason for receding from what was said in *Lemon v. Drexel, supra,* decided since the hearing in the district court, and therefore hold that the court erred in deducting the sixty-seven names signed to the socalled "withdrawals of withdrawals" from the number of withdrawals.

III. , Thirty-three names signed to the general statement of consent were not the same as appeared on the poll books filed with the county auditor, and, under the rul-

3. SAME: comparison of names with poll books.

ing in *Wilson v. Bohstedt,* 135 Iowa, 454, must have been rejected but for the introduction in evidence of the poll books filed with the city clerk of Oskaloosa. The names were identical with those appearing on the latter, which were received in evidence over objection. The writer, with whom Evans, J., concurs, is inclined to the view that, inasmuch as the poll books are made as duplicates, sections 1132, 1116, 1144, and 1145, Code, and duplicates ordinarily are equally admissible in evidence, and the statute does not specify that the poll books filed with the county auditor shall be the criterion by which to test the sufficiency of the statement of consent, the ruling was correct. But the majority of the court are of the opinion that the poll books filed with the auditor are intended, and base their conclusion on several grounds: (1) The poll books filed with the county auditor are preserved, while those filed with the several clerks ordinarily are destroyed eighteen months after the election. Section 1145, Code. (2) The poll books with the auditor are readily accessible at all hearings, and are made subject to inspection of every citizen at all times by section 2453 of the Code. (3) If the statement of consent were for the county, the poll books would be in the keeping of many

clerks scattered over the county, and not assured that security from interference which is provided in the care of the county auditor. (4) Were both to be regarded as those intended, if the name of the voter were not identical on each duplicate book, there would be no way of ascertaining which should govern; for in *Porter v. Butterfield,* 116 Iowa, 727, and *Wilson v. Bohstedt,* 135 Iowa, 451, the only method of identifying names is by the poll books, and parol evidence to aid therein was held not to be admissible. In the opinion of the majority, the court erred in receiving in evidence the poll books filed with the city clerk.

IV.  Section 2452 of the Code provides that: "Every such statement [making up the statement of general consent] shall be accompanied by the affidavit of some reputable person, showing that said person personally witnessed the signing of each name appearing thereon, and any false statement contained in such affidavit shall be punishable as perjury." It is contended that at least two of those who made affidavit, such as required, were not "reputable," within the meaning of this section. By "reputable," as here used, is meant one of good repute in the community. Webster defines "reputable" as: "Having or worthy of good repute; held in esteem; as reputable man or character; reputable conduct; a reputable calling." Manifestly a person may be of good repute, and yet commit an offense against the laws. Indeed, history is replete with instances of the downfall of persons who have hitherto borne good reputations. For this reason, it can not be said a false statement contained in the affidavit required to be made by a reputable person alone is sufficient to prove him to be a nonreputable person.

4. Same: affidavit: reputable person: evidence.

The evidence also disclosed that one Beadle, whose affidavit was attached to a statement purporting to be signed by sixty or seventy persons, had been convicted of gambling in 1903 and twice before that. While on the witness stand he testified that he had been engaged in operating a saloon

for the three years preceding, and was asked if, during four years prior thereto, he was not engaged in keeping a gambling house or gambling rooms, and refused to answer, for the reason that this might subject him to humiliation and contempt. From his refusal to answer alone, it can not be inferred that he was engaged in such business during this time, and the only question before us is whether, having been convicted of gambling, he is presumed to have been a gambler, and the presumption should prevail up to the time of the filing of the affidavit, notwithstanding the testimony that he had been engaged in a lawful occupation during the three years preceding. The law recognizes that men may repent of their past conduct and adopt a correct course of life, and we are not inclined to say that the lapse of six years, with proof that he had engaged in a lawful occupation during the preceding three years, was not sufficient to overcome the inference to be indulged in that conditions once established are presumed to continue. The person was before the court as a witness, and we are not inclined to interfere with its conclusion. It is not to be inferred from the above that we are saying that a person's reputation may be established by proof of particular instances of indirection. We merely dispose of the evidence adduced in response to the briefs presented.

V. The motion to dismiss the appeal was overruled. On the hearing in the district court, the attorneys announced that they represented R. H. Williams in sustaining the rulings of the board of supervisors, and, as he was a citizen of the county, as well as a taxpayer, he had the right to appeal from the ruling of the district court. See *Hemmer v. Bonson,* 139 Iowa, 214.

5. Same: appeal.

The judgment is reversed.