In the matter of the Mulct Petition of Consent for the sale of Intoxicating Liquors in WINNESHIEK COUNTY, IOWA. KNUTE GJERSET, I. B. TORRISON, OTTO E. SCHMIDT, WM. M. LEMEN and M. WILLETT, Appellees, v. OTTO DREXEL, HENRY POTRATZ and ARTHUR WELLS, Appellants.

**Intoxicating liquors:** STATEMENT OF CONSENT: SIGNATURES: COMPUTATION. The statute requiring the signatures of sixty-five percent of the legal voters to a statement of general consent to the sale of liquor, contemplates that the percentage shall be computed upon the poll list of those voting at the last general election, regardless of deaths or removals from the county.

*Appeal from Winneshiek District Court.*—HON. A. N. HOBSON, Judge.

SATURDAY, JUNE 8, 1912.

PROCEEDING to determine the sufficiency of a statement of consent under the provisions of the so-called Mulct Law in and for Winneshiek county. The board of supervisors of such county held the statement of consent to be sufficient under the provisions of section 2449 of the Code. Upon appeal to the district court, this order was reversed, and it was adjudged that such statement of consent was insufficient under the provisions of such section

2449. From such order of the district court the interested parties have appealed.—*Affirmed.*

*E. W. Cutting* for appellants.

*N. Willett* and *M. S. Odle* for appellees.

EVANS, J.—The case was tried below upon a stipulation of facts. It is made to appear that at the general election in November, 1910, there were 4,832 legal voters who voted in Winneshiek county. Prior to June 10, 1911, a statement of consent was circulated in said county under the provisions of the so-called Mulct Law. It was duly signed by 3,083 of the legal voters who voted at such preceding general election as shown by the poll list, all of which signers were then residing within the county of Winneshiek, and outside of any city containing a population of 5,000 or over; there being no city of such population in such county. Of the above signers 32 signed and filed withdrawals before the canvass by the board of supervisors, thus reducing the number of valid signatures to 3,051. Of the legal voters who had voted at the last preceding general election as shown by the poll list 31 had died, and 123 had removed out of Winneshiek county before the time of circulating the statement of consent. That is to say, of the legal voters who voted in Winneshiek county at the general election of November, 1910, as shown by the poll list, only 4,678 were residing in Winneshiek county at the time of the circulating of the statement of consent. Sixty-five percent of all the legal voters who voted at the last preceding general election of November, 1910, would be 3,141; whereas 65 percent of all the legal voters who voted at such last preceding general election and who were still "residing in such county" would be 3,041.

The question presented is, Upon what numerical basis

must the 65 percent be computed in order to render the statement of consent sufficient under the provisions of section 2449? The contention of appellant is that the numerical basis upon which such computation must be made is the number of legal voters who voted at the last general election, and who, "were residing within such county and outside the corporate limits of cities having a population of 5,000 or over." The contention of appellee is that the numerical basis upon which the percentage computation must be made is the full number of legal voters who voted at the last preceding general election as shown by the poll list, regardless of death or removals. The provision of section 2449, under consideration, is as follows: "A written statement of general consent shall be filed with the county auditor, signed by sixty-five percent of all the legal voters who voted at the last preceding general election, as shown by the poll list of said election, residing within such county and outside of the corporate limits of cities having a population of five thousand or over." The dispute between the parties arises over the clause "residing in such county." Does this clause qualify and limit the class or basis upon which the 65 percent computation is to be made, or does it simply qualify and limit the 65 percent? The appellees, of course, contend for the latter construction. That is, they contend that this clause qualifies or limits the eligibility of the signers who shall constitute the 65 percent. The appellant, on the other hand, contends that all these provisions are intended to define and fix the numerical basis upon which the percentage is to be cast. Unfortunately there is something to be said for both views. The statutory provision above quoted evinces an attempt to express in one involved sentence, what could, perhaps, have been better expressed in two. In the light of the provisions of the preceding section, 2448, the writer hereof is inclined to the appellant's contention as present-

ing the fair construction of section 2449. The majority of the court, however, reach a contrary conclusion.

To put the view of the majority briefly, it is that the poll list furnishes a fixed and certain numerical basis upon which the proposed percentage is to be cast. Such numerical basis being thus rendered definite and certain by the poll list, the qualifying provision of the statute must therefore be applied to the eligibility of the proposed signers. It is also the view of the majority that the question is fairly ruled by some of our previous cases. *Porter v. Butterfield*, 116 Iowa, 725; *Wilson v. Bohstedt*, 135 Iowa, 451.

The order of the trial court is *affirmed*.