JOHN H. TAFT and Others, Appellants, v. FRANK SNOUFFER ET AL., Appellees.

**Intoxicating liquors:** PETITION OF CONSENT: REPUTABLE WITNESS. A single illegal act of one obtaining signatures to a petition of consent to the sale of liquor, done several years prior to obtaining the signatures, is not alone sufficient to disqualify him as a subscribing witness thereto, under the statute requiring that the signatures shall be accompanied by the affidavit of some reputable person.

**Same:** SIGNATURES TO CONSENT PETITION. Where voters sign their names to a petition of consent to the sale of liquor in the same manner as they appear on the poll list of the preceding election, though not in their usual and correct form, such signatures are in compliance with the statute requiring that the petitioners shall be those voting at the last election, as shown by the poll lists.

*Appeal from Linn District Court.*—HON. W. N. TREICH-
LER, Judge.

TUESDAY, OCTOBER 15, 1912.

A PETITION of general consent for the sale of intoxi-
cating liquors in the city of Cedar Rapids having been
canvassed and found sufficient by the board of supervisors,
an appeal from such finding was taken by the plaintiffs to
the district court. Upon trial of said appeal, the petition
was again adjudged sufficient, and plaintiffs have again ap-
pealed. The material facts are stated in the opinion.—
*Affirmed.*

*M. S. Odle,* and *C. G. Watkins* and *L. M. Kratz,* for
appellants.

*J. W. Jamison* and *John A. Reed,* for appellees.

WEAVER, J.—Cedar Rapids is a city of more than
5,000 inhabitants. At the last election preceding the filing
of the petition of consent, there were cast 4,723 votes, as
shown by the aggregate of the poll lists of the several pre-
cincts, and the signatures of at least 2,362 of these voters
was essential to the sufficiency of such petition. As pre-
sented, and after deducting withdrawals and certain other
signatures which were concededly not entitled to be counted,
there remained 2,701 names, which appellees claim to be
those of voters appearing upon the poll lists; and it is
stipulated by the parties that if 2,362 of these signatures
are valid, within the provisions of the statute, it constitutes
a majority of the persons eligible to make such application.
To overcome this apparent majority of 339, the appellants
make the objection: (1) That 384 of the signatures to
said petition were procured, witnessed, and verified by one
W. W. Broukal, who is not a reputable person within the

meaning of the statute (Code, section 2452). (2) That
500 or more of the names attached to the petition are not
the correct and proper names of persons voting at said last
preceding election. These objections we shall proceed to
consider separately.

I. The statute provides that every petition or state-
ment of consent "shall be accompanied by the affidavit of
some reputable person, showing that such person personally
witnessed the signature of each name there-
on." To sustain their objection that Broukal
was not a person of this character, the plain-
tiffs offered proof that in the year 1902, in
an action pending in the district court of Linn County, he
had been adjudged guilty of maintaining a liquor nuisance
and permanently enjoined from further participation in
such unlawful business. This testimony was excluded by
the trial court on the ground that proof of specific acts
was inadmissible as evidence affecting a person's reputable
character within the meaning of this statute, and upon the
further ground the act or conduct charged was too remote
in time. Upon this ruling error is assigned.

Whether the first ground of objection to the testimony
was well taken we need not now consider or decide; for
we are clearly of the opinion that the showing of a single
illegal or disreputable act done or committed by Broukal
nine years before the time when he attested the petition is
not alone sufficient to disqualify him as a subscribing wit-
ness. This very question was before us in *De Board v.
Williams,* 155 Iowa, 149, where we said: "The law
recognizes that a man may repent of his past conduct and
adopt a correct course of life; and we are not inclined to
say that the lapse of six years, with proof that he had
engaged in a lawful occupation during the past three
years, was not sufficient to overcome the inference to be
indulged that conditions once established are presumed to
continue." In the absence of evidence, there can be no

*[margin note: 1. INTOXICATING LIQUORS: petition of consent: reputable witness.]*

presumption that Broukal has not obeyed the injunction then entered against him, or that he has been guilty of any new or other violation of the law of the state, or of the moral law. Indeed, the record tends to show that he has since been engaged in lawful business. Counsel say in argument that it was their purpose to follow up the offered evidence with further proof of unlawful and immoral conduct on part of this person extending down to the time of the trial, but were deterred from so doing by the ruling to which we have made reference. It is true that in stating their objections to the names on the petition certified by Broukal appellants charged that he had been guilty of criminal and disreputable conduct covering all said period down to the day of trial; but the record does not show that this objection was made good by any proof or offer of proof of such alleged facts. If they had testimony of this nature, it was their right to offer it in evidence and make proper record of such offer; but, having failed so to do, the question raised by the objection must be decided upon the facts actually shown or tendered in evidence.

II.   The only other objection to the sufficiency of the petition grows out of the following admitted facts: In not less than 1,000 instances, the clerks keeping the poll lists at the last preceding election incorrectly recorded the names of persons who then and there appeared and cast their ballots. In many instances the error consisted in writing down the wrong initial letter or letters of a Christian name, as, for example, W. G. Dows voted at said election, but his name was written upon the poll list "W. H. Dows." In other instances either the Christian name or family name of the voter was incorrectly spelled. For example, one M. L. Alt voted at said election, but his name was recorded by the clerks as "M. L. Auld;" and another voter, Charles - R. Jordon was recorded as C. R. Gordon. The voters here named, and many others of those incorrectly recorded as

2. SAME: signatures to consent petition.

aforesaid, signed the petition or statement of consent, and are included among the 2,701 persons subscribers thereto. In each instance, however, the voter so signing the petition wrote his name therein in the same manner and form in which it appears on the poll' lists, and not in its usual and correct form. These signatures are challenged by the appellants, and upon the questions thus raised the decision of this appeal must turn; for it is conceded that in all respects, other than those discussed in this opinion, the proceedings have been regular and the petition sufficient.

In support of their objection to these signatures, we are cited by counsel to the statute (Code, sections 2448 and 2449), and its interpretation by this court in *Porter v. Butterfield,* 116 Iowa, 725, and *Wilson v. Bohstedt,* 135 Iowa, 451, and other cases of that class. A little examination will make it plain to the impartial mind that these authorities do not go to the extent claimed for them. The statute does provide that only those voters who voted at the last preceding election "as shown by the poll lists," and the decisions referred to do hold that these lists afford the sole criterion or test by which the names of persons so voting shall be ascertained. In cases of the class referred to, signatures have been challenged on the ground that no corresponding names appeared on the lists; and where any material discrepancy has appeared we have sustained the objection, and refused to admit extrinsic evidence to establish the alleged identity. But here there is no discrepancy. The name upon the petition corresponds in all respects with the name upon the lists, and we are asked to disregard it because the voter, in signing the petition, adopted the form or spelling of his name as it had been listed by the poll clerk. This is not denied; nor is it charged or claimed in pleading or in evidence that the person so signing the petition was not the same person who appeared and voted at the polls and was listed by that name. No fraud is charged against the poll clerks; nor is it charged

that the voter in any instance assumed, or attempted to, or did in fact, falsely personate any other person or voter, or gave to the poll clerks a false or assumed name; but it is conceded that in each instance the voter 'actually did vote, and that the name as listed was intended by the clerk for the name of such voter.

While it is not clearly shown, it may be assumed that those in charge of the canvass for signers to the petition, having in mind the statute and decisions above referred to consulted the poll lists in advance, and, when applying to a voter for his signature, took pains to have him write it to correspond with the form in which the poll clerk had recorded it. In so doing no one was wronged, nor any statute violated. In each instance the signer had voted at the last preceding election, and his name, varying in some respects from its true and proper form, was entered upon the poll lists. In each instance the name so listed was intended for the true name. In each instance the voter signed the petition by the name in which he was so listed. This is a literal compliance with the requirement of the statute for signatures of those "who voted at the last preceding election as shown by the poll lists." This holding does not, as counsel seem to fear, open the door to fraud, or enable an evilly disposed person to falsely adopt a name found on the poll lists, and thus acquire a pretended or spurious eligibility to become a signer of a petition of consent. It is just as easy for the evilly disposed to personate the voter who is listed by his correct name as one who is listed by a misspelled name. It being admitted that the signer of the petition is a legal voter of the city, that he did vote at the last preceding election, that he was listed by the poll clerk by a name intended to be his own, that he signed the petition or statement, and that his name so signed is identical with his name as recorded upon the poll list, every requirement of the statute is literally complied with. Indeed, even if a legal voter, in the absence of

fraud, votes under a name that is wholly assumed, and is so listed, we see no reason why he may not sign a petition of consent by the same name, provided that in so using such name he does not intend or attempt to personate any other voter. This is so manifest that argument can hardly make it clearer.

It follows that the judgment below is correct; and it is therefore—*Affirmed.*