W. C. BARBER, Appellant, v. L. H. DEFORD, Appellee.

INTOXICATING LIQUORS: Statement of Consent—Duty to Canvass All Statements—Statutory Construction. A particular expression in one part of a statute, not so large and extensive in its import as other expressions in the same statute, will yield to the larger and more extensive expressions, when the latter embody the real intent of the legislature.

> PRINCIPLE APPLIED: Sec. 2448, Sup. Code, 1913, provides for the filing with the county auditor of statements of consent for the sale of intoxicating liquors in cities having a population of over 2,500 and less than 5,000, and for canvass and findings thereon. No reference is here made to any appeal. Sec. 2450, Sup. Code, 1913, makes no specific mention of the above class of towns, but provides, *"all* statements of general consent filed with the county auditor . . . shall be publicly canvassed . . . *and its finding as to the result in the city having over 5,000 inhabitants,* . . . entered of record.*"* Provision is here made for appeals.
>
> *Held,* the clause of Sec. 2450, apparently limiting therein the authority to make findings only as to cities of *"*over 5,000,*"* must, in view of the evident intent of the entire statute, yield to the larger and more expressive clause, *"*all statements . . . shall be publicly canvassed,*"* with consequent right of appeal to all aggrieved parties.

INTOXICATING LIQUORS: Statement of Consent—Filing—Withdrawal of Name—Withdrawal of Withdrawal. A statement of consent for the sale of intoxicating liquors being filed with the county auditor, the filing thereafter of a withdrawal of a name has the effect *eo instante* of removing said name from said statement, and said name cannot thereafter be reinstated on said statement—in other words, after said statement is so filed, the law will recognize and give force to a withdrawal but will not recognize or give force to a withdrawal of a withdrawal.

NAMES: Christian—Rules to Determine Identity—Intoxicating Liquors.

> 1. The Christian name of a person may consist of one or more letters only.
>
> 2. Where one or more *letters* appear as the Christian name they are treated, in the absence of any showing to the contrary, as the Christian name which the person has assumed.

3. There is no presumption that a *letter* or that *letters* stand for *other* names and are not themselves the Christian name.

4. When *two or more* Christian *names* are used, the middle *name* or letter is quite generally disregarded, not because it is not a part of the Christian name but because not essential to the identification of the person.

5. When the given *name* is written, the middle name or letters may be disregarded in identifying the person.

PRINCIPLE APPLIED: Tested by the above rules, *held*, the following names (first column showing names as appearing in the "poll book," second column showing names appearing on a "statement of consent" for sale of intoxicating liquors) are not the same:

| | |
|---|---|
| P. McCanna | Patrick McCanna |
| G. W. Pring | Geo. W. Pring |
| B. Strange | Basil Strange |
| C. A. Pray | Chas. A. Pray |
| F. D. Gray | Frank D. Gray |
| F. J. Kester | Fred J. Kester |
| P. J. Casey | Peter J. Casey |

**INTOXICATING LIQUORS:** Statement of Consent—Incorrect Poll Book—Signatures to Correspond—Identity. If the voter's name appears on the poll book in an incorrect form he may properly sign a liquor consent statement in such incorrect form but the evidence must be such that it fairly appears that the incorrect name on the poll book represented and stood for this particular voter.

PRINCIPLE APPLIED:

1. The name "L. E. McCelland" appeared on poll book. One L. E. McClelland claimed this "poll book name" represented him and signed *it* on the statement of consent.

2. The name "R. H. McCulland" appeared on poll book. One R. H. McClelland claimed this "poll book name" represented him and signed *it* on the statement of consent.

3. The name "W. B. Osborne" appeared on poll book. One W. D. Osborne claimed this "poll book name" represented him and signed *it* on the statement of consent.

*Held*, it could not be presumed, in the absence of evidence, that these three actual voters "guessed" correctly that these three "poll book names," severally, represented them.

**INTOXICATING LIQUORS:** Statement of Consent—Affidavit to Signatures—Foreign Notary. An affidavit in verification of the signature of a signer of a statement of consent for the sale of intoxicating liquor, reciting as having been made before a notary public

in and for Polk County, Iowa, but whose seal showed him to be a notary public for St. Johns County, Florida, is a nullity.

**INTOXICATING LIQUORS:** Statement of Consent—Verification of
6 Names—Foreign Notary. An affidavit in verification of the signature to a statement of consent for the sale of intoxicating liquors may be made before a notary public in a foreign state, such notary properly signing his name as such. The presumption that such notary acted *in the county* where he was authorized to act is not overthrown by a caption reading: ''State of Iowa, Polk County, SS.''

**INTOXICATING LIQUORS:** Statement of Consent—Signing by
7 ''Mark.'' A voter may sign a statement of consent for the sale of intoxicating liquor ''by mark.''

*Appeal from Polk District Court.*—Hon. Chas. S. Bradshaw, Judge.

Saturday, December 19, 1914.

Rehearing Denied Wednesday, April 7, 1915.

A petition of general consent for the sale of intoxicating liquors in Valley Junction, Polk County, Iowa, was canvassed by the board of supervisors of Polk county, and found sufficient. Appeal from such finding was taken to the district court, and the petition again was adjudged sufficient. From the finding of the district court this appeal has been taken.— *Reversed.*

*M. S. Odle,* for appellant.

*Clark & Hutchinson, Jesse A. Miller, Lester L. Thompson* and *T. L. Sellers,* for appellee.

Withrow, J.—I. The appellee urges that this court is,
1. Intoxicating liquors: statement of consent: duty to canvass all statements: statutory construction. and that the district court was, without jurisdiction to consider this appeal for the following reasons:

a. Valley Junction is a city having more than 2,500 and less than 5,000 population. Under Code Supplement Sec. 2450, there is no provision

for any finding by the board of supervisors as to the result of the canvass of petitions under the mulct law in cities of that class, and, therefore, there can be no appeal from the finding of the board, as no authority or duty is created in the board to make a finding.

b. That the cited section, while providing that all statements of consent filed with the county auditor shall after due notice be publicly canvassed by the board of supervisors, limits the power and duty of the board to entering of record its findings as to the result in ''the city having over five thousand inhabitants, or the county, as the case may be, and the various towns and townships therein,'' and by necessary implication excludes cities between 2,500 and 5,000 in population, no reference being made to them, such cities having a different requirement from other cities and towns as to the number of names necessary to authorize the sale of liquor under the mulct law.

c. That Sec. 2448, which provides for the canvass of petitions in cities of the class under consideration and the entry of the findings of record, is complete in itself, and in that section no right of appeal is granted. That such section provides for a canvass of the petitions at a general or special meeting of the board, while Sec. 2450 authorizes, as to the matter which may be considered under it, findings to be made only at a regular meeting of the board.

It is claimed by appellee that by failing to mention cities between 2,500 and 5,000 in population among those expressly named, and as to which the findings of the board of supervisors shall be entered of record, it must be held to have been the intent of the legislature to exclude them.

Code Supplement Sec. 2450, provides that ''all statements of general consent filed with the county auditor as provided in the two preceding sections (2448 and 2449 Supp.), shall be publicly canvassed,'' etc. In that general provision is necessarily included cities of the population in question, the requirements as to which are fixed in Sec. 2448, Supp., unless they

are expressly excepted. Does the omission to include such cities in express terms in the clause "cities having over five thousand population, or the county, and the various towns and townships therein" leave them outside the operation of that section? While it is a settled rule of statutory construction that where general terms of expression in one part of a statute are inconsistent with more specific or particular provisions in another part, the latter will generally control, it is also the rule that a particular expression in one part of a statute not so large and extensive in its import as other expressions in the same statute will yield to the larger and more extensive expressions, when the latter embody the real intent of the legislature. 36 Cyc. 1130 and cases cited. A careful reading of Secs. 2448, 2449, and 2450, Code Supp., leaves no doubt that it was the legislative intent that as to all classes of cases arising under them the right of appeal should be afforded to both parties as they might seem to be aggrieved. While the legislative intent must, if possible, be determined by a construction of the language it has used, where there is conflict of terms in the same section the rule above stated has full application; and in Sec. 2450 the alleged conflict between the general and the particular expressions, in the light of the purpose of the legislature as expressed in the cited sections, is not of such gravity as to compel us to hold that the general provisions must yield to the particular ones.

We conclude that the provision in Sec. 2450 as to the finding by the board of supervisors, and making a record of such, applies to all cases which are covered by the general terms of the section, that the right of appeal is given, and that we have jurisdiction of the cause.

II. By concession made upon the trial of the case in the lower court, it appears that the total vote of Valley Junction at the general election last preceding the circulation of the statement of consent was 412, and that the statements filed contained 352 names. Based on the total vote as shown, the number of signatures required, that is, eighty per cent of the legal

voters in cities of that size, being between 2,500 and 5,000 population, was 330.

Included in the total of 352 signatures are four which are conceded to be duplicates, five whose names do not appear on the poll list, and one who was a non-resident at the time of the circulation of the statement of consent. This concededly reduced the number of signatures to 342. Of this number, seventeen made withdrawals of their signatures; and of this seventeen, upon the submission of the statement of consent to the board of supervisors, nine filed requests for withdrawals of their withdrawals. Two of the remaining number signed by a mark, which was witnessed only by the canvasser who made the affidavit. Seven, whose names appeared on the poll book with only their initials, signed the petition or statement of consent by using Christian names and initials, as follows:

| ON POLL BOOK. | ON PETITION. |
|---|---|
| P. McCanna | Patrick McCanna |
| G. W. Pring | Geo. W. Pring |
| B. Strange | Basil Strange |
| C. A. Pray | Chas. A. Pray |
| F. D. Gray | Frank D. Gray |
| F. J. Kester | Fred J. Kester |
| P. J. Casey | Peter J. Casey |

The witness to the name of A. H. Dyke on the petition swore to the same before a person who purported to be a notary public in and for Polk County, Iowa, but the notary's seal attached to the affidavit indicated that he was a notary public in and for St. Johns County, Florida.

The witness as to the name of G. J. Zerwech on the petition made affidavit before a notary who properly signed himself as a notary public in and for Bureau County, Illinois, but at the head of the affidavit appeared the caption: "State of Iowa, Polk County, SS."

It was also agreed that the name L. E. McCelland was

signed by L. E. McClelland; R. H. McCulland was signed by R. H. McClelland; W. B. Osborne was signed by W. D. Osborne, the first of each of said names being as shown by the poll list.                                         o

The agreement as to facts simplifies the case. The trial court found the statement of consent to be sufficient. The appellant concisely states the question presented for our determination under the conceded facts as follows:

1. Should the nine withdrawals of withdrawals be considered?

2. Should the seven names in which the initials only were given on the poll books, and the full name written on the petition, be counted?

3. Should the three names appearing alike on both the petition and poll book, but claimed to be spelled in a different manner from what the person who signed the petition usually signed his name, be counted?

4. Should the two names in which there was an alleged defect as to the notary's acknowledgment be counted?

5. Should the two names signed by mark, where the mark was witnessed only by the person circulating the petition, be counted?

The questions raised challenge twenty-three signatures. We will consider them in the order in which they are stated.

III. From the conceded facts it appears that on the 13th day of February, 1911, at eleven o'clock A. M., there were filed with the county auditor statements in writing by seventeen persons who had signed the statement of

2. INTOXICATING LIQUORS: statement of consent: filing: withdrawal of name: withdrawal of withdrawal.

consent, requesting that their names be stricken from it, and be not counted. It also appears that these seventeen withdrawals were on the same day presented to the board, that being the time when the canvass of the statement of consent was made; and at the time the seventeen withdrawals were presented, there were also filed with and pre-

sented to the board of supervisors for their consideration, the written requests of nine of those who had signed the withdrawal statements, requesting that their names remain on the statement of consent. The record contains no other statement as to the time and manner of filing the nine withdrawals of withdrawals, and it must be concluded that the first publicity given to them was at the time they were filed with and presented to the board of supervisors, then sitting as a canvassing board. From these facts we must determine whether the nine withdrawals of withdrawals had the effect of concelling the prior withdrawals and reinstating the names on the petitions or statements of consent.

IV. In the several cases decided by this court involving the sufficiency of statements of consent to the sale of intoxicating liquors under the mulct law, it has been recognized that the right to withdraw a signature from the statement rests in the person signing the statement, and may be exercised by him up to the time that the canvass of the statement is actually commenced by the board of supervisors. *Green v. Smith*, 111 Iowa 183; *Scott v. Naacke*, 144 Iowa 164; *Lemon v. Drexel*, 152 Iowa 144; *De Board v. Williams*, 155 Iowa 149; *Anderson v. Board*, 156 Iowa 153.

The conclusion reached and announced by this court upon that question has not been the result of statutory construction, for the law regulating the presentation and canvassing of statements of consent has no provision allowing the withdrawal of names, but such conclusion is based upon what has seemed to be a necessary recognition of the right of an individual to change his mind upon a question as to which he has expressed himself, if such be done before the matter is taken up for consideration by the canvassing body whose action upon it is invoked.

In some of the cited cases, under the facts there presented, we have held that withdrawals of withdrawals or cancellation of withdrawals should not be allowed, the reason-

ing employed by the court being that upon the filing of a withdrawal, the effect *eo instanti* is to remove the name from the original petition, and that the attempted cancellation of the withdrawal, if allowed, could have no other effect than to reinstate upon the petition a name which had been removed; in other words, really a re-signing of a name or names to the petition. To add to a petition or statement of consent already filed is not allowed, for no name shall be counted which was not signed thirty days prior to the time of filing the statement of general consent. In discussing this question in *DeBoard v. Williams, supra,* this court recognized the right of the elector to change his mind on any subject as often as he pleases, so long as he withholds his intention or conclusion from the record. But when the statement of consent, with his name thereon, is filed with the auditor, it must remain unless withdrawn, and if withdrawn, his name is no longer to be considered as being upon the petition. This court in that case distinguished it from *State v. Geib,* 66 Minn. 266, which seemed to hold to a contrary doctrine, so far as it applied to the cancellation of withdrawals. In the *Geib* case it was claimed, and the court so held, that if the withdrawals which had been authorized to be made by an attorney in fact and the revocation of the power of attorney which authorized the withdrawals were presented to the canvassing board at the same time, the effect was to recall the withdrawal, as notice of the revocation had been given to the attorney in fact and to the board before any action was taken upon them by the board. In considering that case, this court in the *DeBoard* case noted that the presentation of the withdrawals in the *Geib* case was shown to have been against the wishes and demand of those signing them, and, therefore, not binding upon them; while in our own case, then being discussed, the withdrawals were presented with the express authority of those signing them, and this operated to remove their names as petitioners.

As this court in *Anderson v. Board of Supervisors,* 156

Iowa 153, seemed to leave open the question whether with-
drawals of withdrawals should be counted, that case having
been decided after the opinion in *DeBoard v. Williams, supra.*
was filed, we deem it important to note the facts upon which
the decision in the *DeBoard* case was based. In that case the
board of supervisors convened for the purpose of canvassing
the statement of consent on December 26, 1910, at nine o'clock
A. M., at which time the petitions and the larger number of
withdrawals were brought before that body, the time of can-
vassing having, by previous action of the board, been post-
poned from December 21st to December 26th. On the day
fixed, the petition of consent and the petition for withdrawals
filed December 26th were presented. After hearing arguments
upon law questions presented, and before the canvass had
actually commenced, the board adjourned until the afternoon,
and upon reconvening, a petition for the recall of withdrawals
was presented, containing fifty-one names, following which the
board adjourned until nine o'clock of December 27th, at which
time the actual canvass was commenced and continued to a
conclusion. On the 27th of December, at nine o'clock A. M.,
ten additional cancellations of withdrawals were filed, and at
two o'clock P. M. of the same day, six more were filed. The
trial court on appeal, after allowing the cancellation of with-
drawals, found the petition to contain twenty-nine names more
than a majority of the qualified electors, and, therefore, suffi-
cient. Upon appeal to this court we held the cancellation of
the withdrawals should not have been counted, and reversed
the holding of the trial court. It will be observed from this
conclusion that even though question be raised as to the effect
of the cancellation of withdrawals, numbering sixteen, which
were filed on the 27th of December, the day after the board
met for the purpose of entering upon the canvass, the cancel-
lations filed on December 26th, being fifty-one in number, were,
in view of the finding of the trial court, decisive of the result.

From the facts conceded in the present case, it appears

that the canvass by the board was made February 13, 1911, and on that day were presented to that body the' petition and withdrawals, which had been filed with the county auditor, and the cancellation of withdrawals, which it appears were first filed with and presented to the board. True, in the *De-Board* case the withdrawals and cancellation were not presented concurrently, while in the present case such was done, although the withdrawals had previously been filed with the county auditor, the lawful custodian of the petition, and the cancellations had not been so filed; but in both instances, the actual canvass had not been commenced at the time of the filing of the withdrawals of withdrawals. The two cases, therefore, are substantially alike in their facts, and the reasoning which was applied to and controlled the *DeBoard* case has equal application here.

If the reasoning of the *DeBoard* case is sound, and we have no disposition to recede from the position then taken, it must logically follow that, granting that the effect of a withdrawal is to remove the name from the petition after it has been filed with the county auditor, who is by the statute made its lawful custodian, if thus removed there is no means known to the law by which it may be reinstated. While it is true, as heretofore stated, that the right of withdrawal is not of statutory origin, the reasons for recognizing it are well stated in our previous decisions, to which we already have referred. It is urged with some force that if the right of withdrawal be recognized, it should equally be the right in the elector to rescind the act of withdrawing at any time before the petition is actually presented for canvassing by the board of supervisors. Were we to depend alone upon the claim that the right of withdrawal having been recognized by the court, the right to cancel such act should also and for equal reasons be granted, and rest the proposition upon the power of the court to effectuate by construction the purpose of a legislative act, we might with some show of reason reach the end contended for; but if we give force to our previous decisions, and the reasons upon

which they are based, not only in cases arising under the mulct law, but also in county seat removal cases, where the principle which governs is the same, we are bound to hold that after the petition or statement of consent has been filed with the county auditor, as the basis upon which he must publish notice of the intention and request of the petitioners that the privilege to sell intoxicating liquors under the provisions of the mulct law shall be allowed, while withdrawals may be allowed, when such act is completed, the effect is to remove the name or names from the statement of consent, and a cancellation or withdrawal of the withdrawal does not have the effect of reinstating the name. See *Lemon v. Drexel, supra; Green v. Smith, supra; Scott v. Naacke, supra; DeBoard v. Williams, supra; Willing v. Rye,* 123 Iowa 471; *Loomis v. Bailey,* 45 Iowa 400; *Dunham v. Fox,* 100 Iowa 131.

To reach a different conclusion would require an abandonment of the position taken by this court in many decisions; but we are satisfied that the conclusion now reached is not only in harmony with them, but on principle is right. We have been referred to no decision save the *Geib* case in support of a contrary doctrine, and this, as we have noted, has features which distinguish it from the present case; nor have we been able to find any other case which recognizes the right of cancellation of a withdrawal, under conditions as shown in this record, to be a legal right.

This case is different in its facts from *Riley v. Litchfield* decided at the present term. There the cancellation of withdrawal was filed before the withdrawals and operated as a cancellation of the previous act before it had in any measure become effective.

Some of the judges are of the opinion that as the law now here exacts the filing of the withdrawals with the county auditor, these may and must be laid before the board of supervisors, and that if the revocation thereof is presented at the same time, the revocation will become effective to obviate the with-

drawals, and the names should be counted as on the petition, and that such was the holding in *DeBoard v. Williams;* but the majority are with the conclusion here reached.

V. Should the names of the seven voters which appeared on the statement of consent different from their entry on the poll book, be counted? As earlier noted, the names as signed were with the given name in full, as Patrick McCanna; while on the poll book the name was given by initial only, as P. McCanna. Some of the signatures had two initials, and where such was used, the signature on the petition had the same middle initial. The question raised as to this branch of the case, while presenting some difficulties, has been fully determined against the counting of such signatures in *Riley v. Litchfield, supra.*

3. **Names:** Christian: rules to determine identity: intoxicating liquors.

VI. These names appear alike on both petition and poll book, but are claimed to be spelled in a different manner from that in which the voter usually signed his name. In *Taft v. Snouffer,* 157 Iowa 461, this court held that where the voter, in signing the petition, adopted the form of spelling his name as it had been entered by the poll clerk, such was a literal compliance with the statute. In that case it was conceded that in each instance where the names were so signed, the voter actually did vote, and that the name as listed was intended by the clerk for the name of such voter. This branch of the case also is ruled by *Riley v. Litchfield, supra.* The concession at the time of the trial that the several names were signed by persons bearing different names does not go to the extent of proving the identity of such persons with the ones who actually voted under the names appearing on the poll book. This brings the case within the rule of the cited case, and the names should not have been counted.

4. **Intoxicating liquors:** statement of consent: incorrect poll book: signatures to correspond: identity.

VII. The witness to the signature of A. H. Dyke swore to the fact before a person whose certificate recited that he

was a notary public in and for Polk County, Iowa. The seal used in the acknowledgment showed authority to so act in Florida, and overcame the recitation that the acknowledging officer was a notary public for Polk County, Iowa. Authority cannot be found to uphold an alleged

5. INTOXICATING LIQUORS: statement of consent: affidavit to signatures: foreign notary.

official act of a notary public of St. Johns County, Florida, performed in Polk County, Iowa. The name A. H. Dyke on the petition was, therefore, not properly witnessed.

The witness to the name of C. J. Zerwick made affidavit before a notary public who signed himself, as such, in and for Bureau County, Illinois, but the caption of the affidavit was State of Iowa, Polk County, SS. With the exception noted, the affidavit was regular in form. In the absence of evidence to the contrary, it is presumed that the affidavit was taken by the notary public in the county

6. INTOXICATING LIQUORS: statement of consent: verification of names: foreign notary.

where he was authorized to act. The caption or heading does not overthrow this presumption. *Goodnow v. Litchfield,* 67 Iowa 691-696. The name Zerwick coming within this objection was properly counted, and that of A. H. Dyke was not entitled to be considered.

VIII. The fifth point or query of appellant has not been argued, but we hold that where signatures were by mark, and were proven by the affidavit of the person circulating the petition, such is a compliance with the statute, and

7. INTOXICATING LIQUORS: statement of consent: signing by "mark."

that names thus witnessed, if without other objection, should be counted.

IX. We have noted all questions raised by the appellant. We recapitulate, and state the result of our conclusions as follows:

The original statement of consent contained 352 signatures. Deducting the four duplicates, five whose names did not appear on the poll list, and one non-resident, all of which it is conceded should not be counted, there remain 342 names.

From this number should be subtracted seventeen withdrawals, one not properly verified by notary public, seven names which vary from the names on the poll list, and three names which were signed by persons having different names, leaving a net list of 314 names. The number required to grant the petition is 330 names. The statement of consent is insufficient. The finding and decree of the district court is—*Reversed.*

All Justices concur, except as to Paragraph IV, in which a majority concur.