IN THE MATTER OF THE CANVASS OF THE STATEMENT OF GEN-
ERAL CONSENT TO THE SALE OF INTOXICATING LIQUORS
FILED WITH THE COUNTY AUDITOR OF POLK COUNTY, IOWA,
ON THE 28TH DAY OF FEBRUARY, 1900.

Intoxicating Liquors: CANVASS OF STATEMENT OF CONSENT.    Under
1    Code, section 2450, the filing of a general statement of consent
to sell intoxicating liquor which is withdrawn, does not pre-
clude the board of supervisors from canvassing another filed
during the year. It is the canvass of more than one statement
in a single year which is prohibited.

Canvass of Statement of Consent:  DUTY OF SUPERVISORS:  STIPU-
2    LATION.  The duty of a board of supervisors in canvassing a state-
ment of consent to sell intoxicating liquor is to inquire into the
sufficiency and genuineness of the names affixed thereto ; they are
not required to investigate the reputation of the persons making
affidavit to the signatures, and when it is stipulated that a
statement contains a requisite number of signatures of quali-
fied persons to authorize the board to canvass the same and
hold it sufficient, the purpose of the law in this respect is
complied with.

*Appeal from Polk District Court.*—HON. C. A. BISHOP,
Judge.

TUESDAY, MAY 26, 1903.

AN appeal was taken in accordance with the provisions
of Code, section 2450, from the action of the board of
supervisors of Polk county, in holding sufficient a state-
ment of general consent to the sale of intoxicating liquors
in Des Moines. The district court affirmed the action of
the board of supervisors, and persons who contested the
sufficiency of the petition for consent appeal.—*Affirmed.*

*Spurrier, Forbes & Mills* for appellants.

*Reed & Reed, E. T. Morris* and *J. F. Conrad* for
appellees.

McCLAIN, J.—Two objections to the action of the district court are raised by the argument for appellants: First, did the fact that a prior petition for consent had been presented to the board of supervisors during the year, which had been withdrawn before being finally acted upon, render it illegal for the board to approve the petition for consent which was finally approved? and, second, did the trial court err in considering the petition, in the absence of evidence that the persons who made affidavits to the signing of the names on the petition were reputable persons, or in refusing to receive evidence that they were not reputable, in view of an admission made on the trial of the case that a sufficient number of genuine signatures of names of persons legally voting at the preceding election were attached to such petition to constitute a majority of the legal voters of the county, as required by Code, section 2452?

I.    It is provided in Code, section 2450: "Only one statement of general consent from any county, city, or town * * * therein entitled to file the same shall be canvassed by the board of supervisors in any one year." The record shows that on December 30, 1899, a statement of consent was filed in the office of the auditor of Polk county, and notice was published of the canvass thereof to be made January 17, 1900. Whether or not this notice was sufficient is, in the view we take of the case, immaterial. The hearing was continued from time to time, and subsequent notices were given, but before the statement thus filed was finally canvassed by the board of supervisors, to wit, on the 28th day of February, 1900, another statement was filed, and finally acted upon after due notice, the statement of consent first filed having been withdrawn in the meantime on the last day fixed by the board of supervisors by continuance for the consideration thereof.

The contention for appellants is, practically, that when one statement of consent is filed, on which, by proper pro-

ceedings, a final hearing might be had, the board cannot within a year, consider any other statement, irrespective of whether the first statement filed is ever acted upon by the board. But the statutory language already quoted relates to the canvass by the board of the statement of consent, and not to the filing thereof. It needs no elaborate discussion of the words used to support the conclusion that the legislative intent was to prevent such a question being brought before the board a second time within a year after it has once finally acted. However desirable it might be, as a matter of public policy, that the people of the community be not agitated by the circulation of more than one petition during the same year, no purpose to prevent such action is indicated in the language used. The idea seems rather to be that the board of supervisors is not to be compelled or allowed to finally act in such matter more than once within one year, and, in view of the difficulties attending the canvassing of a statement of consent, the provision seems reasonable, and ought to be given full force and effect. But we cannot stretch the language to cover a case not within the reasonable meaning of the words used. If the first statement filed is insufficient, and, before the board has finally acted upon it by making the canvass necessary to determine its sufficiency, another statement, which is sufficient, is filed, and properly brought up for consideration, we see no reason why the second statement may not be approved. In this respect the action of the board of supervisors seems to have been legal.

*1. Canvass of statement of consent.*

II. The stipulation already referred to which was entered into by attorneys with a view to the trial of this matter in the district court on appeal, contains admissions as to the population of the city, the number of votes cast at the preceding general election and the number of genuine signatures to the statement; and it is conceded that these admissions are such as to show the sufficiency of the

statement in this respect.   But it was objected to the
admission of this stipulation in evidence that the persons
who made affidavit to the genuineness of the signatures
were not shown to be reputable persons.   The language of
the Code provision in this respect is as follows: "Sec.
2452.   The signing the name of another to any statement
of general consent provided for in the sections of this
chapter relating to the mulct tax shall be punishable as
forgery, and every such statement shall be accompanied
by the affidavit of some reputable person, showing that
said person personally witnessed the signing of each name
appearing thereon, and any false statement contained in
such affidavit shall be punishable as perjury, and all pro-·
visions of law relative to the bribery of voters are hereby·
made applicable to the bribery of signers to any such
statement of general consent.   All statements of general
consent shall ·show the voting precinct of the signers
thereof, and date of signing, and no name shall be counted
that was not signed within thirty days prior to the filing
of such statement of general consent."

It is evident that the object of the legislature in
adopting this provision was to secure a genuine statement
—that is, one signed by the requisite number of qualified
persons—and to furnish to the board of sup-
ervisors a *prima. facie* showing by way of
affidavit that the signatures relied on are
genuine.   When it was stipulated that a
sufficient number of signatures to the petition or state-
ment now in question were genuine signatures of
qualified persons to authorize the board to canvass the
statement and hold it sufficient, then the· purpose of
the law was complied with, and the affidavits as to
the genuineness of the signatures ceased to be material-
ial.   It certainly cannot be true that under such circum-
stances the board is required to pass upon the reputation
of the persons making such affidavits.   If the genuineness

2, CANVASS of
statement
of consent:
duty of sup-
ervisors:
stipulation.

of the signatures is left to the determination of the board, then, although, no doubt, the persons making the affidavits would be deemed reputable until the contrary was shown, evidence would perhaps be admissible to impeach their reputation. But certainly we ought not to require the board to consider impeaching evidence as to the persons making affidavits when the very purpose for which the affidavits were made and to be used had already been accomplished by stipulation. To adopt the theory of appellant would be to make the granting of a petition of consent depend not alone on whether it had the requisite number of genuine signatures of qualified persons, but also on whether those making affidavit as to the genuineness of the signatures were all of them reputable. Certainly we should not assume that a collateral investigation of this kind is required further than it shall be found essential in determining the ultimate fact, which is presented to the board.

Finding no error in the action of the lower court, its judgment is AFFIRMED.

BISHOP, C. J., takes no part.