C. C. DUFFY, Appellee, v. JOHN G. HENDERSON, Appellant.

**Trial:** WAIVER OF JURY: CONCLUSIVENESS OF COURT'S FINDINGS. The findings of the court in a law action where the jury has been waived have the same force as a verdict.

**Pleadings:** DAMAGES. Where the petition states a cause of action an objection that it was indefinite as to the nature of the damages claimed can not be raised for the first time on appeal, especially where the damages awarded were general and were less than claimed.

**Instruction:** MEASURE OF DAMAGES: HARMLESS ERROR. Where the measure of damages adopted by the court will obtain the same result as that contended for by appellant he can not complain thereof. Thus where the plaintiff and defendant contracted to construct joint drainage, the defendant agreeing to do the work and plaintiff to pay the extra cost of laying the tile deeper for his benefit, but the tile was not laid in accordance with the agreement and he brought action for damages, and defendant counterclaimed for plaintiff's failure to make his payments, the cost of relaying the tile as the measure of damages adopted by the court was equivalent to the difference between the value of the improvement as it was and its value as it would have been if constructed as agreed, as contended for by appellant.

**Pleadings:** AMENDMENT: SURPRISE. The filing of an amendment at the close of the evidence is largely a matter of discretion with the court, and if surprised thereby it is the duty of the other party to ask for time in which to prepare to meet it, failing to do which he is not entitled to a reversal on appeal on the ground of surprise.

*Appeal from Emmet District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, APRIL 9, 1912.

ACTION at law for damages for breach of contract.

There was judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*C. W. Crim* and *J. W. Morse,* for appellant.

*P. H. Paulsen,* for appellee.

EVANS, J.—The parties were owners of adjoining land in Emmet county. The defendant was resident of such county, and the plaintiff was a resident of Illinois. They entered into a contract in relation to the proposed drainage of their respective lands. The natural course of drainage extended from the northwest toward the southeast, carrying the overflow in that direction. The higher land is that of the plaintiff. It adjoins the land of the defendant on the west. The course of drainage referred to extends diagonally across the land of the defendant for a distance of six thousand feet. There was a depression or pond, comprising nearly sixty acres, upon plaintiff's land, situated about two thousand feet west from the partition line between the parties. In order to drain this pond by tile drain over the defendant's land, it was necessary that the proposed tile drain through the defendant's land should be laid much deeper than would be necessary to the use of the defendant alone, for the purpose of draining his land. In other words, the plaintiff needed a deep outlet at his east line, in order to properly drain his pond. This fact was recognized by the parties in their negotiations; and the terms of the contract had special reference thereto. It was also necessary that a twelve-inch tile should be used upon defendant's land for such purpose; whereas, a smaller dimension would have answered the purpose of the defendant. This fact, also, was assumed by the parties. The contract was partly oral and partly in the form of correspondence. The substance of the contract as the court found it was that the plaintiff undertook to pay to the defendant a large proportion of the

expense of defendant laying a twelve-inch tile across his land for a distance of six thousand feet, "according to the profile of the engineer." The following letters will sufficiently indicate the details:

Estherville, Iowa, Jan. 2, '08.

Mr. Duffy—Dear Sir: I was over to see Mr. Blom last night, and he told me that you said, according to the proposition I made, that you would be paying for 5-7 of the ditch. I can not figure that you would be paying for anything more than you would have a right to. When Mr. Blom, Mr. Peterson and I went over and measured the water in your slough, they said that the ditch through my land would have to be from four to seven feet deep, which I do not believe. I said if that were the case, that I would pay for nothing but a four-foot ditch through my farm and whatever deeper it would have to be to give you an outlet, I would expect you to pay it. I think that Mr. Blom did not understand me, when we talked it over before he wrote you. Now, if the proposition inclosed is not satisfactory to you, I will pick a man and you pick a man and let them say what each one of us shall pay and I will sign a contract that whatever those men decide shall be final. I do not want you to pay one cent more than is right and I do not want to dig in a ditch for nothing. Yours very respectfully, [Signed] J. G. Henderson, Estherville, Iowa.

Ottawa, Jan. 6, '08.

J. G. Henderson, Esq., Estherville, Iowa—My Dear Sir: Your favor of recent date was received in due time and contents noted. I herewith quote Mr. Blom's letter. 'He [Mr. Henderson] said that it would take a four-foot ditch to drain his water; and it would take seven-foot ditch to drain your water through him. He thought that you should stand to pay the three foot and half of the four-foot ditch.' Hence my letter to Blom that under those conditions I would have to pay 5-7 of the digging of the ditch. I don't quite understand what you mean in your proposition by stating that you will pay for the digging of a four-foot ditch for an eight-inch tile through your land. I supposed that the ditch would be for a twelve-inch tile and that I was to pay for half of the digging. Now, you know and I know

that in running a tile ditch through your land you are not going to follow the tortuous route of the waterway, but will in many places have to run across a rise of ground in order to have your ditch straight or as nearly so as possible. In such places, you may have to go from six feet to six and one-half feet deep—thus saving in distance, though losing in depth of ditch. Starting at the outlet with a depth of four feet—making that the minumum you will have to go deeper in many places. It will have to be determined by the surveyor at what point on your land the ditch will have to be dug lower in order to drain mine. I will pay for every inch lower that you have to dig on my account; and will pay for half of the ditch from the outlet to the point where he determines the ditch has to be lowered in order to drain mine; and will pay for the extra depth besides half of the depth that it would be necessary to dig to drain your land, from said point to the road. Now, I don't see the necessity of resorting to arbitration in this matter—three men can not determine the depth of the ditch at various places along its line until they see the civil engineer's profile. I think the above proposition is as fair a one as you could ask for; and if it is satisfactory to you advise me. With kindest regards to yourself and family, I am, Yours very truly, C. C. Duffy.

Ottawa, Ill., Jan. 14, '08.

Mr. C. C. Duffy—Dear Sir and Friend: I have had the route of the ditch surveyed by Mr. Callwell and I send you profile of same, so that you can look it over. Please mail it to me within a few days. You will see that the ditch has to be a great deal deeper than we expected, in order to give you an outlet for the big slough. We start to digging this morning. On the profile you will see a red and a yellow line. The red line represents the grade of the ditch that is to carry your water. The yellow line represents the grade it would take to carry my water if I were tiling alone. Mr. Callwell wanted me to send it to you so that you could look it over. He charged $15.85 for surveying and making out profile. Mr. Blom was here and helped survey. Yours respectfully, Jno. G. Henderson.

Blom was the agent of the plaintiff upon the ground. In pursuance of the contract, the defendant laid a twelve-

inch drain across his farm and brought it upon the plaintiff's line. The plaintiff made various payments upon the contract, aggregating about $835. By some oversight, the defendant and his employees ignored the profile of the engineer in laying the west two hundred rods of the drain, and laid the same at an elevation of one and one-tenth feet higher or "shallower" than was provided by the profile of the engineer. This departure from the contract was a very important one as affecting the interest of the plaintiff. It was not discovered by plaintiff until after the payments had been made. The trial court found that it wholly destroyed the usefulness of the drain to him, and that he derived no benefit whatever therefrom. It was not sufficiently deep to furnish the plaintiff a practicable outlet for his pond. It was impossible to remedy the defect, without relaying two hundred rods of tile at an expense of about $1,600. An outlet in another direction could be acquired by plaintiff, and was subsequently acquired; but this also involved an expense exceeding $1,600. The trial court allowed the plaintiff to recover back the full amount paid, less certain item, allowed to the defendant on his counterclaim.

I. The trial court made many specific findings of fact. The appellant challenges these findings, and a large part of his argument is devoted to that end. The action was at law. A jury was waived. The findings therefore have the effect of a verdict. These have substantial support in the evidence. They are therefore conclusive upon appellant, and we can not consider the argument, so far as it is based upon the fact theory in contradiction to the findings of the trial court. Beyond this, there is little left to be considered. The legal propositions advanced by appellant are based, in the main, upon the fact proposition that the enterprise undertaken was a "joint adventure," and was in the nature of a partnership; and that therefore defendant was not

1. TRIAL: waiver of jury: conclusiveness of court's findings.

more responsible for its failure than the plaintiff. There was evidence on behalf of the defendant tending to support this theory; but the court found against the defendant upon the facts in this respect.

II.   Complaint is also made that the petition was indefinite as to the nature of the damages claimed, and that the defendant had no fair opportunity to meet the same. 2. PLEADINGS: It is true that the petition was not cast in damages. a very definite mold. But it was in no manner assailed. Several amendments thereto were filed. These amendments eliminated words and figures and inserted others by reference to line and page of the petition. No effort has been made in the abstract to set the petition before us in its amended form. We have no access to the original files. We have no way to ascertain what was contained on "page 2" of the petition, or on the "10th line" thereof. We can only pass upon the petition, therefore, in its general aspects. It did plead the facts; and it prayed damages against the defendant in a much larger sum than was allowed. In the absence of attack, this was sufficient. The damages awarded were not special damages in the sense contended for by appellant. *Rosenberger v. Marsh,* 108 Iowa, 47.

III.   It is urged that the trial court did not adopt a correct rule as to the measure of damage. The trial court held that the cost of relaying the west two hundred rods of tile 3. INSTRUCTION: was a proper measure of damage. It also measure of found, under the evidence, that such cost damages: harmless would amount to $1,600. Nevertheless it error. awarded to the plaintiff only the amount paid. It also denied defendant's counterclaim for balance due under the contract. The amount thus allowed the plaintiff was much less than $1,600. It may be conceded that there is some inconsistency in the position of the court. If the case were here upon the appeal of the plaintiff, a different question would be presented; but we see no ground

of complaint to the defendant, as appellant, at this point. Assuming the correctness of the court's finding of facts, the defendant was clearly liable, either for the amount paid by the plaintiff, or else for damages upon some other proper basis. The trial court held him to the lesser amount.

Appellant contends that the true measure of damages was the difference between the value to plaintiff of the improvement as it was and its value as it would have been, if constructed according to profile. The effect of the court's judgment was to give appellant the benefit of this very rule. It appeared from the evidence and the trial court found as a fact that the improvement as constructed was of no benefit to plaintiff. If it had been built according to the plan, it would have been worth to plaintiff presumably the amount which he agreed to pay for it; there being no evidence to the contrary. The application of this rule would award to plaintiff the return of the money paid. If an action had been brought by defendant against the plaintiff on the contract to recover the proportionate amount agreed to be paid, the facts found by the trial court would be a complete defense to such action, and would sustain, also, a counterclaim to recover back any amount paid in ignorance of the breach. In such a case, the action would be upon the contract, and not in tort. In the case before us, the defendant filed a counterclaim in the nature of an action on the contract for recovery of the balance to be paid. The trial court had before it, therefore, an action for damages for breach of contract sounding in tort, and a cross-action by the defendant on the contract itself in the form of a counterclaim. Both actions involved the same contract and the same alleged breach; and the determination of one was necessarily determinative of the other. This fact accounts for some confusion in the record and in the application of the rule for the measure of damage. It resulted in giving to the defendant the most favorable result possible under the finding of facts; and he is not in a position to complain.

IV.   Complaint is made because the trial court permitted the plaintiff to amend his petition at the close of the evidence.    The filing of such amendment was resisted by the defendant at the time, on the general ground that he was not prepared to meet the petition in its amended form, and that he was taken by surprise thereby.   It was clearly within the discretion of the trial court to permit the amendment.   *Hall v. Doran,* 6 Iowa, 433; *Tabor v. Foy,* 56 Iowa, 539; *Thomas v. Brooklyn,* 58 Iowa, 438.   If the defendant was taken by surprise thereby, it was his privilege to ask for delay.   He did not do so.   He is therefore not in a position now to urge surprise as a ground of reversal.   *Sheldon v. Booth,* 50 Iowa, 212.

4. PLEADINGS: amendment: surprise.

The foregoing disposes of the principal questions presented by appellant for our consideration.   Thirty-one specific errors are assigned as grounds of reversal.   We can not enter into a separate discussion of each in detail, without extending this opinion to undue length.   They all inhere in the general propositions which we have discussed above.   We find no prejudical error.

The judgment entered below must therefore be *affirmed.*