M. JACKMAN AND OTHERS, Appellees, v. THE BOARD OF SUPERVISORS OF BLACKHAWK COUNTY, IOWA, AND OTHERS, Appellants.

**Intoxicating liquors:** CANVASS OF CONSENT: PUBLICATION OF NOTICE.
1    The statutes requiring the publication of notice for the canvass of a petition of consent to the sale of intoxicating liquors in the official newspapers of the county, was satisfied by publication in the papers treated and recognized as the official papers for the year, although the record of the supervisors failed to show the reappointment or selection of such papers.

**Same:** FILING OF POLL LIST: JURISDICTION. The poll books of the
2    last city election by which the sufficiency of the signatures to a petition of consent to the sale of liquor is to be determined are those filed with the county auditor, the existence of which and the filing of the same in compliance with the statute are jurisdictional. So that where a poll book was not filed within the statutory time and before the canvass of the petition of consent, neither the supervisors nor the court on appeal had jurisdiction to act on the petition; and the subsequent authentication of the poll book was not sufficient to confer jurisdiction.

**Same:** VERIFICATION OF SIGNATURES: REPUTABLE PERSON. A person

who has been convicted of violating the liquor laws, with no evidence by the party having the burden of showing his reputable character, that since such conviction he has been engaged in a lawful business, is not qualified as a reputable person to verify the signatures to a petition of consent to the sale of liquor, within the meaning of the statute requiring the same to be so verified.

Same: JURISDICTIONAL FACTS: BURDEN OF PROOF. The statutory qualifications required of signers to a petition of consent and of the persons verifying the same are jurisdictional matters; and where the contestants put their qualification in issue the parties inaugurating the proceedings have the burden of establishing the jurisdictional facts, at least to the extent of making a *prima facie* case.

Same: PETITION: VERIFICATION OF SIGNATURES. Where a party verifying the signatures to a petition of consent admitted changing names on the petition to make them conform to the poll lists, and was unable to point out the names so changed, the petition verified by him was not in compliance with the statute.

Same: CANVASS OF PETITION: REVIEW ON APPEAL. Where neither the board of supervisors nor the district court in canvassing a petition of consent made a schedule of the individual names admitted or rejected, the Supreme Court can not review the proceedings with respect to the disputed identity of names with any degree of certainty or satisfaction.

*Appeal from Blackhawk District Court.*—HON. C. E. RANSIER, JUDGE.

THURSDAY, OCTOBER 17, 1912.

A PETITION of general consent for the sale of intoxicating liquors in the city of Waterloo under the provisions of the mulct act having been presented to the board of spervisors was canvassed, and found insufficient. From this finding plaintiffs herein appealed to the district court. Upon trial of said appeal the petition was found to have been signed by the requisite number of voters, showing a majority of 59 names after deducting signatures subject to proper objection, and the order entered by the board of

supervisors was reversed. From the judgment so entered the defendants appeal to this court.—*Reversed* and *remanded.*

*Reed & Tuthill* and *Courtwright & Arbuckle*, for appellants.

*W. N. Birdsall, J. T. Sullivan, H. B. Boies,* and *C. W. Mullan,* for appellees.

WEAVER, J.—The insufficiency of the petition of consent was contested on several grounds, which, so far as they affect this appeal, may be stated as follows: (1) That no legal notice of the canvass of the petition was given by the board. (2) That some of the poll books or poll lists by which the petition must be tested were not properly certified or identified as required by law, nor had they been preserved or kept by the proper custodian. (3) That a large proportion of the signatures appearing upon the petition were never verified by the affidavits of reputable persons as required by law. (4) That a large number of the names subscribed to the petition are neither actually nor substantially identical with the alleged corresponding names upon the poll lists.

I. The objection to the notice given for the canvass of the petition is that the statute requires its publication for a given length of time in the official newspapers of the county. It was, in fact, published for the required period in three newspapers of the county, but the evidence tends to show that, while these journals had been selected as official newspapers for the preceding year, no selection had, in fact, been made for the year in which the petition was canvassed, or, if made, no record entry of such selection had been preserved. It does appear, however, that such papers had been treated and recognized as "official" during the

1. INTOXICATING LIQUORS: canvass of consent: publication of notice.

year in question. There is also some rather indefinite oral testimony tending to show that their selection had been voted by the board and record thereof inadvertently omitted. But, whether voted or not, we think the fact that these papers and none other in the county were at that time recognized and used as the official papers of the county is sufficient to justify the publication of this notice therein, and that the lack of a record showing this reappointment or selection is not fatal to the jurisdiction of the board of supervisors to consider the petition. *City v. Scudder,* 41 Wash. 15 (82 Pac. 1022) ; *De Board v. Williams,* 155 Iowa, 149.

II. While the objection to the authenticity of the poll books was raised as to several different precincts, it was waived or abandoned by appellants as to all except the books purporting to contain poll lists from the Second precinct of the Third ward of the city. The election upon which the appellees claim to base their petition is the regular city election held on March 28, 1910. The canvass of the petition was begun on September 15, 1910. The appeal from the finding made by the board was tried at the February, 1911, term of the district court. By the law of this state municipal elections are held according to the regulations enacted for the conduct of general elections (Code, section 642). It is made the duty of the election board in each precinct to enter in each poll book a list of the persons voting and a written return or certificate showing the number of votes cast, and for whom cast, which return is to be signed by the judges and clerks. Code, section 1144. Two such books shall be made and certified, and, in the case of a city election, one of such books must within two days be delivered by one of the judges to the county auditor, and the other shall be delivered by one of the judges to the city clerk. In each instance the receiving officer shall file such book and preserve it for eighteen months, or until the settle-

2. SAME: filing of poll list: jurisdiction.

ment of any pending contest of such election. Code, section 1145. To comply with the conditions of the mulct statute in a city of more than 5,000 inhabitants, the petition of general consent must be signed by a majority of the voters residing in the city and voting therein at the last city election as shown by the poll books. Code Supp. 1907, section 2448. The poll books by which the sufficiency of the signatures to the petition are to be determined are those filed with the county auditor, and not those retained by the local officer. *De Board v. Williams, supra.*

The petition of consent in this case was filed with the county auditor on August 10, 1910, and, as already stated, the hearing thereon before the board of supervisors was begun on September 15, 1910. Up to that time the poll books of the Second precinct of the Third ward of the city of Waterloo had never been certified or returned by the election board as required by law, nor had either copy thereof ever been delivered or filed with the county auditor. During the hearing before the supervisors, said books were brought in and admitted subject to the objections of the contestants on the grounds above indicated. One set of these books was then marked with the word "Auditor," and left in the custody of that official, and the other was retained by the city clerk, but neither book bears any filing mark indicating that it was never filed in either office. As we understand the record, the board of supervisors regarded the objection to the poll books from said precinct as fatal, and rejected the names of the petitioners whose qualifications depended thereon. On the trial of the appeal in the district court the petitioners brought in as witnesses the persons who had acted as judges and clerks of election for said precinct at the election of March 28, 1910, who testified, in substance, that the books had been left uncertified and undelivered to the auditor through oversight; that upon present inspection they discovered no changes in said books since the record made by them on the day of said election;

that they did not know where the books had been kept, but each said, in substance, that "assuming the poll books have been in the custody of the proper parties and that no changes have been made, and that they are now in the same condition that they were, so far as the contents are concerned, at the time they were delivered to the clerk," he would be willing now to sign the proper certificate. Pending the ruling upon the appellant's objection to these books, the witnesses who had served as members of the election board of said precinct appear to have been permitted to sign a certificate which was attached to said books, stating in the usual form the number of votes cast at such election and for whom cast, adding thereto the further statement that "this certificate is made for the purpose of correcting the omission by oversight to fully certify to the return of said election on the poll lists before returning the same." The appellant's objections were thereupon overruled, and the poll lists thus attested were admitted in evidence and the lists given effect as being sufficiently authenticated. The names of voters upon such lists number 640.

The question raised by the appellant's objection at this point is a serious one, and it is not fully met by any of the authorities to which we are cited by the appellees. The decision in *Wilson v. Bohstedt,* 135 Iowa, 453, which is relied upon by the appellees, does not seem to be controlling. The question we have here to consider was not in that case. The objection there passed upon did not deny that the poll books had been duly certified and returned to the proper officer, but was based upon the claims that the said lists had been taken temporarily from the auditor's office for examination by persons interested in supporting or opposing the petition, and that the competency and value of such records as evidence were thereby destroyed. The point so made was overruled. Here, however, it is to be remembered that at the time the petition of consent was signed four months after the election, and at the time it

was filed, and at the time the board of supervisors entered upon its canvass of the petition six months after said election, there was no certified poll list in existence anywhere of the electors voting thereat in the Second precinct of the Third ward, nor was there any such poll list either certified or uncertified returned to or filed with or in the possession of the county auditor who, as held in the *Oskaloosa* case, 155 Iowa, 149, is the legal custodian of the only list by which a petition of consent is to be tested. Other precedents called to our attention are election cases and it is only in a very indirct aspect that they can be said to offer any help in disposing of this appeal. We do not, and can not, inquire into the election of March 28, 1910. We have to accept that election as an accomplished fact, and to look to a certain designated record (if there be one) of said election as furnishing the only test or standard of comparison in determining the identity and names of voters who are entitled to be heard in the matter of a petition of consent. The existence of such a record is jurisdictional, and, if it be not produced or in some proper manner supplied, neither the board of supervisors nor the district court on appeal nor this court has any authority to canvass or act upon the petition. When the existence of a jurisdictional fact is challenged by denial, the burden is, of course, upon the proponent or moving party to establish such fact by competent evidence. That challenge was promptly made in this case at the outset of the canvas of the petition, and it developed at once that no poll list of the March election in the precinct in question had ever been presented to or filed with the county auditor, but from the office of the city clerk there was produced two unsigned and uncertified lists purporting to contain the names of the electors voting at said election in said precinct. So far as the record upon this appeal shows, no attempt was made before the board to supply the legal certification of said lists, but upon the appeal to the district court, as we have

already shown, there was oral evidence tending to identify the lists and pending that trial the persons who had acted as an election board in that precinct were permitted to attach a certificate to the books. Now it may be that in any case which turns upon the canvass of any vote cast at an election held according to law the authority of the court to require the amendment or correction *nunc pro tunc* of any record which may be found necessary to give effect to the voice of the majority will continue until all contests of such election are adjudicated. But, in a case where the statute for a wholly collateral purpose designates a particular record of that election as a test or proof of a person's legal qualification to appear as a petitioner in a proceeding before the board of supervisors or other tribunal, the reasons which make proper the rule and practice above mentioned are not so apparent. In an election case it is a matter of fundamental right and public importance that the voter's ballot be counted and counted as cast, and every reasonable rule will be applied to effectuate that end. But, under our statute, the right to be heard upon a petition of consent is not the right of the voter as such, but of those voters only who voted at the preceding election, and whose names are to be found upon the poll list —a list which we have defined and construed to be the one deposited with the county auditor. It will avoid confusion if, in considering this phase of the case before us, we bear in mind the proposition that the list so designated is not a mere matter of evidence by which to discover or point out the electors who voted at the last preceding election, but the existence of such list as the statute requires is an essential element in the qualification of the individual elector to be a petitioner. It follows of logical necessity that, although a voter has voted at the last preceding election, his right to unite in a petition of consent does not mature until the statutory requirement concerning the poll list is complied with, and, if for any reason this is post-

poned or delayed, subsequent compliance can have no retroactive effect to validate a petition or signature which was unauthorized when made. Now, assuming for the purposes of this case the existence of authority in the district court upon the hearing of an appeal from the board of supervisors to consider oral evidence as a substitute for the official certificate required by law to be attached to the poll books, or to permit the certificate to be then made by persons who had acted as judges of an election held nearly a year before, we have still to inquire how such order or ruling affects, if at all, the qualifications of voters at the time they signed the petition or at the time when the petition was submitted to the board for canvass. The petition it will be remembered was signed within thirty days prior to August 10, 1910, the date on which it was filed. The board entered upon the canvass September 15, 1910. Objections to the qualification of the signers to the petition were made at the outset of such canvass. The uncertified lists from the office of the city clerk were then produced, and never until then was a copy left or deposited with the auditor. These lists in the same condition were produced again on the trial of the appeal where a belated certificate was made by the persons who had acted as an election board. Under the mulct statute, the circulation of a petition of consent must be made and completed within thirty days prior to the filing. All papers which the law requires to be filed with the auditor relating to the mulct statute must be kept by him open to inspection by any citizen. Code, section 2453. This requirement we have held applicable to the poll lists. *Wilson v. Bohstedt,* 135 Iowa, 453. After the filing of the petition and notice given of the proposed canvass, it was the right of any citizen of the city to examine it, and, if he believed it insufficient, to contest its canvass before the board of supervisors. This was in fact done by several citizens. For the purpose of that contest, it was quite necessary, or at least

proper, for them to investigate the qualifications of the signers to the petition. This they could effectually do only by reference to the specified record which the statute makes the final test—the poll lists on file with the county auditor. At that time there was no poll list for the Second precinct of the Third ward in the said office, and never had been. Such was the situation when the canvass was begun and the contestant's objections to the petition presented. It follows that the objection was insuperable so far as it applied to signatures of electors who voted in the precinct named. If it can be said, and we will so assume for the purposes of this case, that the subsequent deposit of the uncertified lists with the auditor or the oral testimony given in support of the petition on the trial in the district court, or the certification which was there permitted had the effect to supply the omitted act or record and to qualify from that date the voters in said precinct to become signers of a petition of consent, it is a qualification which, as we have already suggested, is without retroactive effect. The question is not who were qualified signers at the time this contest was submitted to the district court on the trial of the appeal, but rather who of these signers were qualified therefor at the time the petition was filed, or, at the very latest, at the time the canvass was begun, and the contestants appeared to take issue upon the sufficiency of the petition. Up to that moment, we think it must be admitted no voter of the Second precinct of the Third ward was qualified to join in a petition of consent because of the entire absence of the official record which is made an indispensable condition thereof. If the petition was insufficient when filed and offered for canvass, that defect can not be cured by any device short of a new petition in the making and presentation of which the requirements of the statute are fully observed. Concerning the jurisdictional character of the preliminary statutory provisions see quite in point *People v. Wanek*, 241 Ill. 529 (89 N. E. 708).

III. We turn next to the objection that many of the signatures to the petition are not verified by the affidavits of reputable persons as required by law. It appears

3. SAME: verification of signatures: reputable person.

that the signatures to the petition were procured by several different persons, each of whom circulated a copy which he presented to different individual voters, and these papers, when signed, were assembled into one body or petition, each solicitor making affidavit to the effect that the names of the voters severally subscribed thereto were personally signed in his presence by said voters on the day and date set opposite to their several signatures. The lists thus returned and verified by several of said solicitors, and containing the names of several hundred petitioners, are objected to by the contestants on the ground that the record shows that such verifications have not been made by "reputable persons" within the meaning of the statute. In support of this objection, it is shown without dispute that one of said solicitors verifying said petition had been adjudged guilty of violating the liquor laws of the state on five different occasions within the last twenty-five years, that another had been convicted of a like offense in the year 1902,. and another had been convicted of maintaining a liquor nuisance in November last preceding the filing of said petition. It was further shown that on April 29, 1910, in the United States District Court, six of said solicitors, including two of the three just mentioned, had been found guilty of violating the federal statutes relating to the sale of intoxicating liquors, and each had been adjudged to suffer imprisonment in jail for the term of sixty days, and to pay a fine of $100 and costs. It is admitted, however, that a pardon or a remission of the penalties was thereafter procured from the President of the United States. In still other cases it is shown that, after the signatures of certain voters had been procured, it was discovered or believed that the names so signed upon the

petition did not agree with the poll lists. In quite a number of such cases the solicitor, acting as he claims upon the consent or authority of the signers, himself rewrote or changed the signed names to make them correspond with the poll lists. In one instance the change was made upon the authority of a son of a signer, who says, however, that the son's action was approved by him. In some cases there is evidence tending to show that changes were made without the authority or consent of the petitioners. The number of such changes is not definitely ascertained, and the solicitor who was most active in the work of revising the signatures admits his inability to say how many times he exercised that liberty. The statute governing the manner of securing and verifying these petitions makes the signing thereto of the name of another punishable as forgery, and a false statement in the affidavit as perjury, and provides that the document shall be verified upon oath to the effect that the affiant personally witnessed the signing of each name therein. Code, section 2452.

The objections based upon the foregoing conditions of fact require us first to consider and decide whether solicitors who have been convicted upon their own plea of guilty of violating the laws regulating the very business for which they seek the protection of a statutory consent are men who satisfy the requirement of the statute that verification of the petition shall be made by reputable persons. The question of the construction of this particular provision has not been considered by this court, except in the *Oskaloosa case,* 155 Iowa, 149, where it is briefly discussed with reference to facts differing in material respect from those which are here involved. In the case *In re Intoxicating Liquors,* 120 Iowa, 680, the reference to this statute was controlled by a stipulation of the parties which rendered a construction unnecessary. In the case first cited, objection was raised to the verification because six years prior to the making of the affidavit had been convicted of

gambling.  It otherwise appeared that for the last three years he had been engaged in a lawful occupation.  In refusing to so sustain the objection we said:  "The only question before us is whether having been convicted of gambling he is presumed to have been a gambler and the presumption should prevail up to the time of filing the affidavit, notwithstanding the testimony that he had been engaged in a lawful occupation during the three years preceding.  The law recognizes that men may repent of their past misconduct and adopt a correct course of life, and we are not inclined to say that the lapse of six years with proof that he had been engaged in lawful occupations during the preceding three years was not sufficient to overcome the inference to be indulged that conditions once established are presumed to continue."  In the present case some of the judgments of conviction offered in evidence were at more or less remote dates in the past, but in neither instance is there any evidence of subsequent engagement in lawful business, and in each and every instance a conviction had taken place upon a plea of guilty of violating the law relating to the sale of intoxicating liquors within less than a year prior to the making of the affidavits.  If upon such showing without any testimony whatever upon the part of the party having the burden to establish the reputable character of the solicitors we are to overrule the objection raised by the contestants, we, by judicial pronouncement, wipe from the statute the provision which requires that the persons verifying the petitions shall be reputable as effectually as if it had been repealed by express action of the Legislature.  The thought of the trial court seems to have been that the words "reputable persons," as here used, are equivalent to "credible persons," and that if such persons are not impeached in some of the methods usually employed for that purpose, or if the court sees no reason to disbelieve the statement in the affidavit,

the purpose of the law is satisfied. But in our judgment this is an erroneous proposition.

A petition signed by voters having a specified qualification and verified by a person having another specified qualification are indispensable conditions to the jurisdiction of the board of supervisors or of the court upon appeal to consider or canvass such petition. Jurisdictional facts will not be presumed, and, where issue is taken upon them, the burden is upon the party inaugurating the proceeding to establish them. A person may be credible as a witness speaking under oath, and yet not be "reputable" within the meaning of the law. The latter word is not confined to a matter of reputation, but implies to some degree a character which is worthy of good repute or entitled to the esteem and respect of good citizens generally. See Century Dictionary; Webster's New International Dictionary; *State v. Chittenden,* 127 Wis. 468 (107 N. W. 500); *Austin v. City,* 48 N. J. Law, 118 (3 Atl. 65); *Lambert v. Stevens,* 29 Neb. 283 (45 N. W. 457). Illustrating to some extent the jurisdictional requirements contained in the statute—the qualification of the petitioner and the qualification of the man who makes the affidavit—is the *Austin* case above cited. The facts there involved were as follows: In the state of New Jersey an applicant for a license to sell intoxicating liquors must be recommended or indorsed by not less than twelve "reputable freeholders" of the city. An applicant presented his petition signed by twelve or more persons each of whom held title to land within the city, and therefore within the letter of the law. A remonstrance being interposed, it was discovered that the petitioners or a large portion of them had been made freeholders by the conveyance of small fractions of a tract of comparatively worthless land, and that such conveyance had been made to and accepted by them for the express purpose of qualifying such grantees to become sign-

*(margin note: 4. SAME: jurisdictional facts: burden of proof.)*

ers of petitions for liquor licenses. Upon this ground, the remonstrators challenged the standing of the petitioners as "reputable freeholders." They also denied the genuineness of the signatures to the petition. The objections being overruled and license issued, the decision was reversed on certiorari. The court, referring to the objections raised to the application, say: "If the facts stated in the remonstrance are true, they controlled the jurisdiction of that body (the city council), and it was without power to act in the granting of a license." Further speaking upon the construction of the statute, it is said: "There is force in the word 'reputable,' used in our statute, in its application to some of the signers to this petition." The court then proceeds to state the scheme by which these freeholders were given title to land to enable them to act in the capacity of petitioners for licenses, and adds, "persons who will lend themselves to such a scheme are not the reputable freeholders whose certificate will be received by law in any tribunal intrusted with the responsible duty of controlling the sale of intoxicating drinks as a satisfactory recommendation of good repute for honesty and temperance of one who seeks a license." Bearing upon the burden of proof in this class of cases a pertinent precedent found in *Lambert v. Stevens*, 29 Neb. 283 (45 N. W. 457). Under the statute of that state, the applicant for license must present a petition signed by a majority of the resident freeholders. In the cited case a petition was filed, and its granting was opposed by certain remonstrating citizens. The license was granted, and the contestants appealed. The order below was affirmed because the evidence had not been preserved, but in stating the law applicable to such contests the court says: "The petition must be signed by the requisite number of freeholders in order to give the city council jurisdiction of the matter of granting a license. As this is essential to jurisdiction, and as it can not be presumed when a remonstrance is filed denying

that the petition is signed by a majority of the freeholders, it then becomes the duty of the applicant to establish that fact. When the remonstrance denies that any specified petitioner is a freeholder, it is the duty of the applicant to furnish proof of the same." To the same effect is *Goodwin v. Smith,* 72 Ind. 113 (37 Am. Rep. 144).

If the rule of these cases is correct, and we think it can not be doubted, it follows that when the contestants in this case took issue upon the jurisdictional facts, including both the sufficiency of the signatures to the petition and the character of the persons by whom it was verified, the burden rested upon the proponents to establish such facts by at least a *prima facie* showing. This, so far as the latter fact is concerned, they did not attempt to do. Still further bearing upon the question of character which the court may say conforms to the statutory standard, see *Whissen v. Furth,* 73 Ark. 366 (84 S. W. 500, 68 L. R. A. 161); *Bachman v. Town,* 68 N. J. Law, 552 (53 Atl. 620). In the *Whissen* case, where the statute required the holder of a license to be of good moral character, the court was considering an application for license by a man who had been conducting a gambling house with the consent of the city authorities upon paying a monthly fine or license fee for the privilege. He had quit the business, and proposed thereafter to observe the law. Upon the question whether this history disqualified him under the law the court says:

In business affairs the evidence shows him to be upright and honorable, and socially he appears to be popular and highly esteemed, and there is nothing shown against his private character. The evidence shows him to have been a continuous violator of the criminal laws for many years. That the officers condoned these violations only renders them violators of the law also, and did not change the criminality of his acts before the law, however much or little it may have changed it in public opinion. If such a person is entitled to a license under the section

quoted, then the purpose of this legislation is defeated.
. . . But counsel urge that the same degree of moral
character is not required of a person to conduct a saloon
that is required of a superintendent of a Sunday school
or a minister of the gospel, and insist that the requirement
is fulfilled if the applicant has as good moral character
as the other applicants. . . . This argument will not
prevail. The law may not expect the same degree of
morality for a saloon keeper as a minister, but it does
require of each equal obedience to the law. It is thor-
oughly settled by authority that an habitual violator of
the laws, even violations which are only *malum prohibitum,*
instead of *malum in se,* is not within the meaning of the
statute requiring the applicant to be of good moral char-
acter. . . . The mere fact that in the past a person
has offended the laws habitually will not prevent him hav-
ing a character within the statute if the evidence shows a
real reformation. This fact, like all other showing of
good character, must be established by the applicant.

With reference to the requirement that an applicant
for a license must be a person of good moral character,
the Indiana court has said that "to be guilty of a public
offense is an immorality within the meaning of that word
as used in law regulating and licensing the sale of intoxi-
cating liquors." *Groscop v. Rainier,* 111 Ind. 361, (12
N. E. 694). We do not overlook the fact that the last
cited case and some others deal with statutes prescribing
the qualifications of a dealer to receive a license, while in
the case at bar we have to deal with the qualification of
the maker of an affidavit which is an essential to the grant-
ing of a consent under the protection of which dealers
shall have, if not license, at least the right to engage in
the traffic without incurring a penalty. But the difference
in fact involves no difference in principle. In each case
the statute makes it an indispensable requisite to the grant-
ing of the license or consent that a designated person con-
nected with the proceedings therefor shall bear a good
character and the necessity of complying therewith can not

be dispensed with in either case. .Indeed, if either requirement is to be held the more imperative, it must be the one found in our own statute for the requirement there is jurisdictional in its nature. We are of the opinion, there- .fore, that the objections to the consideration of the names found upon the petitions circulated by the several solicitors to whom we have referred should have been sustained.

We think, also, that the objection raised to some ·of the other petitions, especially the one or more verified by the solicitor Wilford, should have been sustained. Counsel

5. SAME: petition: verification of signatures.

for appellees concede, as indeed they must, that the act of said solicitor in writing the names of others upon the petition or changing such names as to make them correspond with the poll lists was a clear violation of the law. Possibly (though we do not so decide) if all these unauthorized signatures could be pointed out, thus enabling the canvassing board to eliminate them from the count, this defect might be disregarded, but, as a witness upon the stand said solicitor admits his inability to say how many of the names appearing upon the petition were written by him, and we think his own showing should be held to vitiate the petition which he verified. In disposing of this question we call attention to *In re Veasey,* 6 Pennewill (Del.) 52 (63 Atl. 801), a case decided by the Delaware court. In that state the statute requires that not less than twelve freeholders sign the application for a license, and that each signer must either have read it himself or have had it read to him. An applicant presented a petition signed by thirty-five alleged freeholders. It appeared, however, that six of this number had neither read the petition, nor had it read to them, and this fact was held to constitute a fatal objection, although there were admittedly more than twelve signatures remaining of persons duly qualified. Whether we should be inclined to go to this extent we need not here decide, but it illustrates the strictness with which nearly

all courts are disposed to construe the conditions which the law imposes upon the liquor traffic in the interest of the general public. See, also, last paragraph of opinion in *Ferguson v. Supervisors*, 71 Miss. 524 (14 South. 81); *Wilson v. Hines*, 99 Ky. 221 (35 S. W. 627, 37 S. W. 148); *Grant's Case*, 2 Pa. Co. Ct. R. 87; *Faulkner's Case*, 2 Pa. Co. Ct. R. 86; *Scott v. Naacke*, 144 Iowa, 164; *Covert v. Munson*, 93 Mich. 603 (53 N. W. 733); *Grubbs v. Griffin* (Miss.) 25 South. 663; *Littleton's Case*, 113 App. Div. 471 (99 N. Y. Supp. 417); *Mason v. Ratcliffe*, 27 Ind. App. 290 (60 N. E. 1099); *Pisar v. State*, 56 Neb. 455 (76 N. W. 869). While these cases do not involve facts like those presented in the present case, they are illustrative of the tendency of courts to require strict compliance with the statutory conditions upon the legalizing or licensing of such business.

IV. Concerning the identity of individual signers, the record is too obscure and confused to justify us in prolonging this opinion for a discussion of it. It contains no schedule or statement of the individuals whose names were admitted to the count or of those rejected. The appellants seem to have moved or to have asked for a specific statement by the court in this respect, but the application was overruled, and, while the point is not argued, it would seem to have been a reasonable and proper request. Without a showing of that nature this court is unable to review the proceedings below in respect to the disputed identity of names upon the petition with those in the poll lists with any degree of certainty or satisfaction. But the conclusions we have already announced operate to eliminate from the petition more than sufficient signatures to change the result, and require a reversal of the judgment below. The case will, therefore, be remanded to the district court, with directions to enter judgment affirming the finding of the board of supervisors.—*Reversed and Remanded.*

6. SAME: canvass of petition: review on appeal.