THOMAS D. FOSTER, ET AL. Appellees, v. L. T. CRISMAN, ET AL. Appellants.

Evidence: IMPEACHMENT: CREDIBILITY. The testimony of an impeached
1  witness is not entitled to any weight unless corroborated by other credible evidence.

Intoxicating liquors: CONSENT PETITION: REPUTABLE PERSON: EVIDENCE.
2  One guilty of bootlegging, gambling and attempting to bribe public officers, while circulating a petition of general consent to the sale of intoxicating liquor and witnessing the signatures thereto, is not a reputable person within the meaning of the statute, requiring that such statements of consent shall be accompanied by the affidavit of some reputable person that he witnessed the signatures thereto. Evidence held to show that the person witnessing the signatures in the instant case was disqualified for the above reasons.

Same: REPUTABLE PERSON. For the purpose of determining whether one
3  who circulated and witnessed the signatures to a consent petition was a reputable person, within the meaning of the statute, it is competent to show his conduct both before and after that time, if not too remote. The term reputable person as used in the statute refers to the affiant's real character as distinguished from his reputation, and one not having a good moral character is not a reputable person; conviction of crime or a plea of guilty is not necessary to show that the person was not reputable.

**Same:** CONSENT PETITION: SUFFICIENCY. A consent petition to the sale of intoxicating liquors, though signed by the requisite number of qualified voters, is not sufficient unless accompanied by the affidavit of some reputable person who witnessed the signing.

**Same:** BURDEN OF PROOF. The burden of showing that persons who witnessed the signatures to a petition of consent to the sale of liquor were reputable, within the meaning of the statute, is in the first instance upon the party seeking to establish its sufficiency.

*Appeal from Wapello District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, JANUARY 20, 1914.

THE trial court found that the petition of general consent to sell intoxicating liquor was insufficient. Defendants appeal.—*Affirmed.*

*Jaques & Jaques, J. J. Smith,* and *Gilmore & Moon,* for appellants.

*Chester W. Whitmore,* and *George L. Gillies,* for appellees.

PRESTON, J.—On December 18, 1912, the appellants, who are also referred to in the record as proponents, filed with the auditor of Wapello county a written statement of general consent for the sale of intoxicating liquors in Ottumwa, under the provisions of the mulct law. The board of supervisors found the petition sufficient. On appeal the district court found the statement insufficient. Its judgment was based upon the finding that one of the canvassers, L. A. Mongerson, was not a ''reputable person'' within the meaning of the law, and that therefore the sixty-four names returned by him should not be counted. Counting these sixty-four names, the petition would be sufficient by a majority of forty-one; not counting them, the petition would be insufficient by twenty-

three.   The other issues were found in favor of proponents. Whether such person was or not reputable is the sole question presented by appellants.

The following appears in the findings of the trial court: L. A. Mongerson was one of the circulators of the general consent petition.   He has resided in the vicinity of Ottumwa for a number of years.   He worked last summer for Abe Jackson, went to South Dakota to work in harvest.   After ten days or so there he came back to Ottumwa.   Did nothing more until September, when he again worked for Jackson about a month.   Did nothing more legitimately until he went to work on the petition.   Worked on that ten days, and since then has done no lawful labor.   He abandoned his wife and child and has left them to shift for themselves since last summer.   His wife was compelled to get a court order to prevent his abuse of her.   While working for Jackson he slept in the barn and for a while after he quit and then went to room with Harry Leonard over a drug store on Church street.   Reid Fiedler, merchants' police on the south side, testifies that Mongerson was running a gambling house in the Leonard rooms in November and December.   Got his first information from Everett Humble, and then watched the place and saw various persons going to and from the rooms after night.   That Mongerson offered him money on two occasions to keep quiet about the game and let him keep running it.   Humble testified that he was in the rooms on several occasions, saw a crap game going on in November, and in December he played in a poker game in which Mongerson was the banker.   That he bought beer and whisky of Mongerson in the rooms.   Mrs. Ella Mahaffey, a sister-in-law of Mongerson's, testifies that in the fall Mongerson told her he was bootlegging, and in December that he had five rooms over the drug store, and that if she would see Fiedler and get him to allow the place to run another month he would give her $25.   E. B. Thompson, a restaurant man, testified that Mongerson was in his place shortly before petition was circulated and told him

that he (Mongerson) had worked hard all day bottling booze. To meet this testimony proponents introduce witnesses who testify that Mongerson is a reputable person and that his moral character and reputation for truth is good; other witnesses who testify that Humble's moral character and reputation for truth is bad; other witnesses who testify that Fiedler's moral character is bad; other witnesses who were in and about the rooms where the gambling and bootlegging is claimed to have been conducted and they saw or heard nothing to indicate such was being done; other witnesses that Humble claims were present when he was and who deny being present or having any knowledge of the place. Contestants produced witnesses who testified that Fiedler's moral character is good.

Humble was impeached. Fiedler was better sustained than he was impeached. The evidence of an impeached witness is entitled to no weight unless corroborated by other credible evidence. Humble is corroborated in some

1. EVIDENCE:
   impeachment:
   credibility.

particulars. He describes the rooms in question about as others describe them. The entrance and general arrangement he described the same, but differs in some particulars as to furniture. His story that Mongerson was running a gambling house and selling liquor is corroborated by Mrs. Mahaffey; that he was running a gambling house by Fiedler; and that he was bootlegging by Thompson. The evidence of Thompson is neither impeached nor denied. Mrs. Mahaffey appears to be on good terms with Mongerson. She keeps his little girl. He frequently visits her house and did the evening before she testified first. She has no apparent interest in the case. She gave her testimony in a candid and truthful manner, and its force must be conceded. Mongerson on the stand in a half-hearted manner denied Mrs. Mahaffey's statements. His manner of testifying was not to his credit, and his general bearing indicated that he is what he is accused of being. The witnesses testifying to Mongerson's moral character, reputability, and reputation for truth are persons not associating with him much and know-

ing him for short intervals and who base their testimony largely upon the fact that they had not heard him discussed prior to the talk about the gambling rooms. While this testimony is good of its kind it cannot offset positive testimony of repeated and persistent violations of the law.

No other conclusion can be arrived at under the evidence but that Mongerson last November and December, and while he was witnessing names to the consent petition, was a persistent and flagrant violator of the law against bootlegging, against gambling, against running a gambling house, and against the bribery of public officers, and that, such being the case, he was not a reputable person within the meaning of the statute, and names witnessed by him cannot be counted on the petition. Mrs. Mahaffey also testifies that Mongerson quite often came to her house to see his child when he was intoxicated.

2. INTOXICATING LIQUORS: consent petition: reputable person: evidence.

The question as to the reputability of this person was warmly contested. Several distinct charges were made and tried out. The evidence on this point was somewhat voluminous. It is not practicable to set it out in detail. We have examined the evidence and from our reading of it we are satisfied with the findings of the trial judge who saw and heard the witnesses. It is sometimes as important to see the witnesses, their appearance, expression, and manner of testifying, as it is to know what they say. We should give weight to the finding of the trial court.

The affidavits were made by Mongerson November 19, 20, and 23, 1912. Some of his acts and conduct tending to show that he was not a reputable person were after these dates, but very soon after, while others were before. They were of the same general character and continuous. It is doubtless true that, if a person was reputable at the time and lost that character afterwards, it would not invalidate the names on the petition secured by him. But as a rule men do not become bad all at once.

As tending to show what his character was at a particular time, it is competent to show his conduct before and after that time, if not too remote. His conduct before ought not to be too remote, if there is evidence tending to show he has amended his life. Nor should it be too long after. If it has been continuously bad for a long time before, and continues so up to or after the time in question, we see no reason why it may not be shown.

3. SAME: reputa-
ble person.

Each case must be governed by its own facts. A person may commit one offense of such a serious character and of so recent a date as that he could not be held to be reputable, while another may have committed an offense of less serious character, or through inadvertence, or he may have reformed, so that, notwithstanding such circumstances, he should be held to be reputable. So few people are perfect that perfection is not expected or required. All men are not expected to have and maintain the same standard of morality and reputability.

In the *De Borad* case, 155 Iowa, 149, and the *Taft* case, 157 Iowa 461, the evidence tended to show a reformation of the parties attacked. The question was not decided *In Re Intoxicating Liquors,* 120 Iowa, 680, because of a stipulation which rendered it unnecessary. In the *Jackman* case, 156 Iowa 620, the words ''reputable person'' were for the first time construed. It was there held that they are not equivalent to ''credible person,'' and that the word ''reputable'' is not confined to a mater of reputation, but that it implies to some degree a character which is worthy of good repute or entitled to the esteem and respect of good citizens generally.

Another definition of reputable is: ''Having, or worthy of, good repute.'' Webster's New International Dictionary. Another definition is: ''Not mean or disgraceful.'' Century Dictionary. See, also, 34 Cyc. 1623.

We think it has reference to a person's real character, as distinguished from reputation, as under the statute in regard to seduction, which provides, in substance, that, if a person seduce an unmarried woman of previously chaste character

he shall be punished, etc.    In such case it is held that it is her actual character in that respect, and not her reputation. Where the real character is the issue, it is competent to show specific acts in order to prove that the person does not possess such a character.    This is not the rule where general moral character may be shown.    Under section 4614, the general moral character of a witness may be proved for the purpose of testing his credibility.    Under this statute, a person's general moral character, or his general reputation for morality, have been treated as synonymous, but specific vices may not be shown.    It has been said that: "The rules regarding proof of character are illogical.    .    .    .    Evidence of common reputation in the community is entirely proper when the reputation is itself the ultimate fact."    16 Cyc. 1273.

One man may deserve that character without having acquired it, which another man may have acquired without deserving it.    But, as stated, we think the ultimate fact whether one is a reputable person under Code, section 2452, is whether he is in fact reputable.

Under the laws of New Jersey, an applicant for a license to sell intoxicating liquor must be recommended or indorsed by not less than twelve reputable freeholders of the city. Under this law, an applicant presented his petition, signed by twelve or more persons, each of whom held title to land within the city and were therefore within the letter of the law.    It was discovered that the petitioners, or a large part of them, had been made freeholders by the conveyance of small fractions of a tract of comparatively worthless land, and that such conveyance had been made to and accepted by them for the express purpose of qualifying such grantees to become signers of petitions for liquor licenses.    The holding was that they must not only be freeholders but that they must be reputable freeholders, and that they were not such because of the fraud.    *Austin v. City*, 48 N. J. Law 118 (3 Atl. 65). This is one of the cases cited in the *Jackman* case, *supra*.

A person not having a good moral character could not be

held to be reputable. A bootlegger and gambler is not a person of good moral character entitled to citizenship under the laws of the United States. *In re Trum* (D. C.) 199 Fed. 361. See, also, *Whissen v. Furth*, 73 Ark. 366 (84 S. W. 500, 68 L. R. A. 161); *Foster v. Police Commissioners*, 102 Cal. 483 (37 Pac. 763, 41 Am. St. Rep. 194); *Ouachita County v. Rolland*, 60 Ark. 516 (31 S. W. 144); *Hardesty v. Hine*, 135 Ind. 72 (34 N. E. 701); *Groscop v. Rainier*, 111 Ind. 361 (12 N. E. 694). In the foregoing cases the actual character was shown.

It is not necessary, as contended by appellant, that there should be a conviction of, or plea of guilty by, the party attacked in order to show that he is not reputable.

Appellant contends that the real question in these cases is whether the petition was in fact signed by a majority of qualified persons. That statement is not broad enough. There might be a majority signing the petition and it still not be sufficient. Other provisions of the statute must be complied with. One of these is the clear, plain provision that the statement shall be accompanied by the affidavit of some reputable person, etc. Suppose a majority did sign the statement, but the persons making the affidavits were all in fact not reputable, would this be a compliance with the statute? Clearly not.

4. SAME: consent petition: sufficiency.

As an original proposition, the writer would disagree with the holding in the *Jackman* case to this extent: That I would not place the burden of proof upon proponents to show, in the first instance, that the canvassers were reputable. In my opinion, it should be presumed, but it has been held otherwise, after full argument, and, as it is largely a question of practice, it is perhaps not of great consequence.

5. SAME: burden of proof.

We are of opinion that the judgment of the trial court was right in finding the petition insufficient because the canvasser, Mongerson, was not a reputable person. This renders it unnecessary to determine questions raised by appellees on

their cross-appeal.  Appellees have filed a motion to strike appellants' abstract, also a motion to dismiss or affirm.  They are overruled, and the judgment is—*Affirmed.*  All the Justices concur.